Peter J. Richardson
515 N. 27th Street
Boise, Idaho 83702
Idaho State Bar No. 3195
Telephone (208) 938-7901
Facsimile: (208) 938-7904
peter@richardsonadams.com

Attorney for Plaintiffs

Robert C. Huntley
R. HUNTLEY LAW, PLLC
815 West Washington Street
P.O. Box 2188
Boise, Idaho 83701
Idaho State Bar No. 894
Telephone (208) 388-1230
Facsimile: (208) 388-0234
rhuntley@huntleylaw.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FRANKLIN ENERGY STORAGE ONE, LLC, FRANKLIN ENERGY STORAGE TWO, LLC FRANKLIN ENERGY STORAGE THREE, LLC, FRANKLIN ENERGY STORAGE FOUR, LLC<br><br>        Plaintiffs,<br>vs.<br><br>IDAHO PUBLIC UTILITIES COMMISSION,<br><br>        Defendant. | Case No.: _____<br><br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL POWER ACT, THE PUBLIC UTILITIES REGULATORY POLICIES ACT OF 1978, AND FEDERAL ENERGY REGULATORY COMMISSION REGULATIONS |

Plaintiffs as their claim allege:

## I.

## JURISDICTION AND VENUE

1.     Section 210(h)(2)(B) of PURPA, 16 U.S.C. § 824a-3(h)(2)(B), permits any Qualifying Facility ("QF")[1] to petition the Federal Energy Regulatory Commission ("FERC") to bring an enforcement action under section 210(h)(2)(A), 16 U.S.C. § 824a-3(h)(2)(B).

---

[1] Plaintiffs are each a QF, see infra at ¶ VII.

Complaint for declaratory judgment and order implementing the same.

1.

2.      When FERC does not bring an enforcement action within 60 days of the filing of such a petition, the petitioner may, under section 210(h)(2)(B) of PURPA, 16 U.S.C. § 824A-3(h)(2)(B), bring its own enforcement action directly against a State regulatory authority in the appropriate United States district court.

3.      On December 14, 2018, Plaintiffs[2] petitioned FERC to bring an enforcement action against the Defendant, the Idaho Public Utilities Commission ("Idaho Commission"), under section 210(h)(2)(A), 16 U.S.C. § 824a-3(h)(2)(A). The petition was docketed as FERC Docket No. EL18-50-000. On February 15, 2018, FERC issued a "Notice of Intent Not to Act" in which it declined to initiate an enforcement action pursuant to section 210(h)(2)(A) of PURPA. FERC stated: "Our decision not to initiate an enforcement action means that Petitioners [Franklin Energy Storage] may themselves bring an enforcement action against the Idaho Commission in the appropriate court." Citing to 16 U.S.C. § 824a-3(h)(2)(B).

4.      This Court has jurisdiction over this action pursuant to PURPA section 210(h)(2)(A), 16 U.S.C. § 824a-3(h)(2)(A), which authorizes Plaintiff to bring an enforcement action in a United States district court against a state regulatory authority to enjoin violations of and ensure compliance with PURPA and FERC's PURPA regulations.

5.      Venue in this Court is proper because the Idaho Commission is located in this district and is the state regulatory authority responsible for implementing PURPA is in this district. The Idaho Commission's acts and practices that form the basis for the violations alleged in this complaint occurred in this district.

---

[2] Franklin Energy Storage One, LLC, Franklin Energy Storage Two, LLC, Franklin Energy Storage Three, LLC and Franklin Energy Storage Four, LLC (Herein collectively "Franklin" or the "Franklin Energy Storage").

Complaint for declaratory judgment and order implementing the same.

2.

## II.

## PRELIMINARY STATEMENT

6.      This is an action seeking injunctive and other appropriate relief against the Idaho Commission for its usurping the exclusive authority of the Federal Energy Regulatory Commission ("FERC") to classify Qualifying Facilities ("QF) under the Public Utilities Regulatory Policies Act of 1978 (PURPA).

7.      PURPA grants to state regulatory commissions, such as the Idaho Commission, the authority to set terms, conditions and even the rates that regulated investor owned utilities must pay QFs for their electrical output.  PURPA also vests exclusive authority in FERC to determine whether an entity is, or is not, a QF, and as such that it is therefore entitled to the benefits of such state determination as to the terms and conditions of contracts and the rates that investor owned utilities must pay QFs for their electrical output.

8.      The Idaho Commission sets different terms and conditions for two broad classes of QFs.  QFs, called "other QFs" by the Idaho Commission, are entitled to contract terms of up to twenty years and are entitled to published nonnegotiable rates.  The other class of QFs classified by the Idaho Commission are solar and wind QFs.  According to the Idaho Commission (as relevant herein) solar and wind QFs are only entitled to two-year contracts.

9.      Plaintiffs propose to sell the output from their FERC self-certified QFs at the rates and contract terms available for "other" projects as classified by the Idaho Commission.  The Plaintiff's projects are energy storage systems (batteries that are energized with solar panels) that are, according to FERC, distinct QFs apart from the source of energy used to charge the batteries.

Complaint for declaratory judgment and order implementing the same.

3.

10.     In response to the Plaintiff's proposal, the Idaho Power Company ("Idaho Power") petitioned the Idaho Commission for a declaratory judgment ruling that the Plaintiff's QF projects are not "other" QFs entitled to twenty-year contracts and more favorable rates but are instead classified with solar and wind QF's that are only entitled to a two-year contact at much less favorable rates.

11.     A two-year contract term is uneconomic for the construction of energy storage projects such as the Franklin Energy Storage facilities.

11.     The Idaho Commission granted Idaho Power's petition for a declaratory order by concluding that the Franklin QF projects fall within that Commission's solar/wind QF classification.

12.     The Idaho Commission's ruling is based on its finding that that energy storage systems are not distinct QFs but, instead are defined by the nature of the source of their energy input.  This ruling contravenes an express FERC ruling on the nature of energy storage QFs. The Idaho Commission ruling deprives the Franklin Energy Storage projects of their right to the Idaho Commission's more favorable contract terms and rates available to all "other" QFs and instead restricts them to the less favorable contract terms and rates that are available, under the Idaho Commission's implementation of PURPA, to just solar and wind QFs.

13.     The resulting two-year contract, versus a twenty-year contract, greatly diminishes, or virtually destroys the financial / economic viability of the projects.

### III.

### THE PARTIES

**A.     Parties Plaintiff:**

Complaint for declaratory judgment and order implementing the same.

4.

14.     Plaintiff, Franklin Energy Storage One, LLC, is an Idaho limited liability company which has sought to develop an energy storage small power production facility as a FERC self-certified QF in Idaho. Plaintiff's energy storage facility is a "small power production facility" within the meaning of Section 210(1) of PURPA. *See* Section 3(17) of the Federal Power Act, 19 U.S.C. § 796(17). Plaintiff's energy storage facility has been self-certified as a QF in FERC Docket No. QF17-581(001).

15.     Plaintiff, Franklin Energy Storage Two, LLC, is an Idaho limited liability company which has sought to develop an energy storage small power production facility as a FERC self-certified QF in Idaho. Plaintiff's energy storage facility is a "small power production facility" within the meaning of Section 210(1) of PURPA. *See* Section 3(17) of the Federal Power Act, 19 U.S.C. § 796(17). Plaintiff's energy storage facility has been self-certified as a QF in FERC Docket No. QF17-582(001).

16.     Plaintiff, Franklin Energy Storage Three, LLC, is an Idaho limited liability company which has sought to develop an energy storage small power production facility as a FERC self-certified QF in Idaho. Plaintiff's energy storage facility is a "small power production facility" within the meaning of Section 210(1) of PURPA. *See* Section 3(17) of the Federal Power Act, 19 U.S.C. § 796(17). Plaintiff's energy storage facility has been self-certified as a QF in FERC Docket No. QF17-583(001).

17.     Plaintiff, Franklin Energy Storage Four, LLC, is an Idaho limited liability company which has sought to develop an energy storage small power production facility as a FERC self-certified QF in Idaho. Plaintiff's energy storage facility is a "small power production facility" within the meaning of Section 210(1) of PURPA. *See* Section 3(17) of the Federal Power Act, 19

Complaint for declaratory judgment and order implementing the same.

5.

U.S.C. § 796(17).  Plaintiff's energy storage facility has been self-certified as a QF in FERC Docket No. QF17-584(001).

18.     Each of the Franklin Energy Storage Facilities is separately owned.

**B.     Party Defendant:**

19.     The Defendant, Idaho Commission, is the state regulatory authority with ratemaking jurisdiction with respect to the sale of retail electric energy in Idaho and the responsibility to carry out certain PURPA-related functions, including, under PURPA section 210(f), 16 U.S.C. § 824a-3(f), the responsibility to implement FERC's PURPA regulations.

## IV.

## FACTUAL ALLEGATIONS AND CLAIMS

20.     The Franklin Energy Storage projects bring this civil action to enforce federal statutes, the Federal Power Act ("FPA"), 16 U.S.C., Ch 12, the Public Utility Regulatory Policies Act of 1978 (PURPA), *see* 16 U.S.C. § 824a-3, and FERC's regulations implementing PURPA, *see* 18 C.F.R. pt. 292.

21.     Defendant Idaho Public Utilities Commission has established a policy of denying qualifying power production facilities (Qualifying Facilities or QFs) *see* 16 U.S.C. 824a-3(a)(1), that are energy storage qualifying power production facilities their rights under PURPA.  In doing so, the Idaho Commission advanced reasons that usurp the Federal Energy Regulatory Commission's ("FERC") exclusive jurisdiction to determine and grant power production facilities their federal status as "qualifying facilities" under PURPA.

22.     The FPA gives FERC exclusive jurisdiction to regulate wholesale electricity sales and prices, and thereby establishes a bright line barring states from regulating in that area.  16

Complaint for declaratory judgment and order implementing the same.

6.

U.S.C. § 824(b).  The only exception to that rule is when a state is acting pursuant to its authority under PURPA.

23.     PURPA is designed to encourage the development of alternative energy sources, including, as relevant here, energy storage facilities that are 'energized' by means of renewable or alternative sources of energy. *See* 16 U.S.C. § 824a-3(a), *Luz Dev. & Fin. Corp.* 51 FERC ¶ 61,078 (1990).

24.     FERC is charged with establishing regulations to implement PURPA, and specifically the requirement that electric utilities must purchase power from qualifying power production facilities (QFs).  16 U.S.C. § 824a-3(a)(1).  State regulatory authorities, in turn, are charged with implementing FERC's regulations.  16 U.S.C. § 824A-3(f).

25.     Plaintiffs are each a developer of a 25-megawatt ("MW") energy storage generation facility that is self-certified as a QF.

26.     The Idaho Commission denied Plaintiffs their right to the Commission's established avoided cost rates and contract terms that it has made available for all QFs other than wind or solar.

27.     In order to do so, the Idaho Commission usurped FERC's exclusive jurisdiction to make determinations as to the QF status of PURPA projects.

28.     After having exhausted its administrative remedies before the Idaho PUC, Plaintiffs petitioned FERC on December 14, 2017, to find the Idaho Commission in violation of PURPA and FERC's regulations, and asked FERC to bring an enforcement action against the Idaho Commission to correct the violations.

Complaint for declaratory judgment and order implementing the same.

7.

29.    In response to their petition, FERC issued a notice that it would not bring an enforcement Action on February 15, 2018.

30.    FERC's notice of its intent not to act made no finding as to the merits of Plaintiffs' claims.

31.    FERC's decision not to initiate an enforcement action on behalf of Plaintiff's allows Plaintiffs to now initiate this action on their own behalf.

32.    Plaintiffs bring this enforcement action under PURPA Section 210(h)(2)(B), 16 U.S.C. § 824a-3(h)(2)(B) and ask this Court to direct the Idaho Commission to bring its practices into compliance with PURPA and FERC's PURPA regulations and orders.

## V.

## STATUTORY AND REGULATORY FRAMEWORK

33.    Under the Supremacy Clause of the United States Constitution, a state law, rule or tariff is preempted when Congress intends federal law to occupy the field or when a state regulation stands as an obstacle to the accomplishment of Congress's goals.  Under Part II of the Federal Power Act, 16 U.S.C. § 824(b), Congress has granted FERC the exclusive authority to regulate in the wholesale electricity field.  Only FERC may set wholesale rates and regulate wholesale markets.  The only exception to this rule is if a state is acting pursuant to its authority under PURPA.

34.    Congress enacted PURPA in 1978 to reduce the nation's dependence on traditional fossil fuels for electrical generation.  Section 210 of PURPA sought to accomplish that goal by encouraging the development of non-traditional electricity generating facilities.

Complaint for declaratory judgment and order implementing the same.

8.

35.     Congress found that one obstacle to the development of alternative energy projects was the reluctance of traditional electric utilities to do business with such projects.  In response, section 210 of PURPA created a new class of "favored cogeneration and small power facilities" in the overall regulatory scheme of the nation's energy markets.  PURPA directed FERC to promulgate rules requiring utilities to purchase electric energy from Qualifying Facilities that have "a power production capacity which … is not greater than 80 megawatts." 61 U.S.C. § 796(17)(A).

36.     Under PURPA, Congress gave state regulatory commissions, such as the Idaho Commission, the authority to implement certain elements of the statute in accordance with FERC's PURPA rules.  16 U.S.C. § 824a-3(f),(g).  While state utility commissions are charged with determining avoided cost rates at which QFs may sell to utilities, that authority is circumscribed by PURPA's mandates and FERC regulations, including the requirements that: (i) such rates "shall …[n]ot discriminate against [QFs]," 18 C.F.R. § 292.304(a)(1)(ii); *see also*  16 U.S.C.  § 824a-3(c)(2); 18 C.F.R. § 292.302(b)-(d), and (ii) that "[e]ach electric utility shall purchase…any energy and capacity which is made available [directly or indirectly] from a qualifying facility." 18 C.F.R. § 292.303(a).  In short, state action to implement PURPA must give effect to its Congressionally-mandated statutory purpose and FERC's PURPA regulations, including PURPA's requirement that electric utilities must buy from QFs at rates that comply with FERC's regulations.  16 U.S.C. § 824a-3(a)(2).

37.     Under PURPA, utilities must purchase electricity from QFs at rates that do not "exceed the incremental cost to the electric utility of alternative electric energy." *Id.* § 824a-3(b). That incremental cost is "the cost to the electric utility of the electric energy which, but for the purchase from [the QF], such electric utility would generate or purchase from another source." *Id.*

Complaint for declaratory judgment and order implementing the same.

9.

§ 824a-3(d). That cost is commonly referred to as the utility's "avoided cost." 18 C.F.R. § 232.101(b)(6).

38.    In its duly promulgated regulations, FERC interpreted section 210(a) of PURPA, 16 U.S.C. § 824a-3(a), as imposing on electric utilities an obligation to purchase all electric energy and capacity made available from qualifying cogeneration and small power production facilities. *See* 18 C.F.R. § 292.303.

39.    FERC's regulations provide Qualifying Facilities with an option to sell capacity and energy to electric utilities pursuant to a "legally enforceable obligation" with the rate determined at the time the obligation is incurred. *See* 18 C.F.R. § 292.304(d)(2).

40.    FERC also has issued regulations establishing criteria, including capacity size and fuel use, and procedures for small power production facilities and other facilities to be certified as Qualifying Facilities. *See* 18 C.F.R. §§ 292.203(a), 292.204.

41.    FERC has exclusive authority over QF status determinations. Section 201 of PURPA provides that a QF is a small power production facility that "the Commission [FERC] determines, by rule, meets such requirements ... as the Commission may, by rule, prescribe." 16 U.S.C. Sec. 796(17)(C)(i)

42.    Section 210(f) of PURPA, 16 U.S.C. § 824a-3(f), requires state regulatory authorities and non-regulated electric utilities to implement FERC's PURPA regulations.

Complaint for declaratory judgment and order implementing the same.

10.

## VI.

## IDAHO PUC's PURPA IMPLEMENTAION SCHEME

43.     PURPA is implemented in Idaho by the Idaho Public Utilities Commission on an ad hoc, order-by-order basis.  There are no Idaho statutes or administrative rules implementing PURPA.

44.     Idaho Power Company, the utility to which the Franklin Projects seek to sell their PURPA QF qualified power and energy is a public utility subject to regulation by the Idaho Public Utilities Commission.  *See* Idaho Code, Title 62.

45.     The Idaho Commission has established standard-offer avoided cost rates, with a contract term of up to twenty-years for all QFs (other than solar or wind QFs) if those non-wind or non-solar QFs have an electrical generating capacity of ten average monthly megawatts (10aMW) or less.  *See* IPUC Order Nos. 33357 and 33419.   For wind and solar QFs, the Idaho Commission allows wind and solar QFs of up to 100 kW[3] similar twenty-year contracts at published rates.[4]  However, it limits the availability of its published rate 'standard offer' contracts to just two years for solar and wind QFs that are larger than 100 kW.  The Idaho Commission ruled that:

> After careful consideration, the Commission [Idaho PUC] ultimately determined that it was appropriate to maintain the 100 kW eligibility cap for published avoided cost rate for wind and solar QFs.

*See* IPUC Order No. 32697, at p. 3.

---

[3] Kilowatt (kW):  One thousand watts.  Megawatt (MW):  One million watts of electricity.  aMW: average Megawatt production over a specified time, in this case one month.
[4] The Franklin Energy Storage projects are each designed to generate less that 10aMW and more than 100 kW.

Complaint for declaratory judgment and order implementing the same.

11.

And:

> This Commission [Idaho PUC] is confident that, with other changes to the avoided cost methodologies incorporated in the Order, changing eligibility from 10 aMW for resources other then wind and Solar is unnecessary at this time. We find that a 10 aMW eligibility cap for access to published avoided cost rates for resources other than wind and solar is appropriate...

*See* IPUC Order No. 32697, at p. 15

Finally:

> We maintain the eligibility cap at 10 aMW for QF projects other than wind and solar (including but not limited to biomass, small hydro, cogeneration, geothermal and waste-to-energy.

*See* IPUC Order No. 32176 at p. 9, (parenthetical in original.)

46.    Thus, under the Idaho Commission's orders implementing PURPA, standard twenty-year avoided cost rates and contracts are available to non-solar and non-wind QFs with a monthly capacity of ten average megawatts or less. Wind and solar QFs are only entitled to standard twenty-year avoided cost rates and contracts if they have a nameplate capacity of 100 kW or less.

47.    While states have the authority, and duty, to implement PURPA by establishing avoided cost rates and terms of conditions for establishing a legally enforceable obligation (a.k.a. contract), they do not have the authority to determine whether a particular project is, or is not, a QF. That responsibility is exclusively in FERC's jurisdiction.

## VII.

## FRANKLIN ENERGY STORAGE QF STATUS

48.    The Franklin Energy Storage Facilities are each a 25 MW "qualifying small power producer" within the meaning of section 210(h)(2)(B) of PURPA.

Complaint for declaratory judgment and order implementing the same.

12.

49.    The Franklin Energy Storage Facilities are all self-certified QFs pursuant to FERC

Docket Nos. QF17-581 through QF17-584.

50.    The Franklin Energy Storage Facilities are each similarly described on their Notice

of Self Certification (FERC Form 556) at paragraph 7h as follows:

> The project consists of an energy storage system Qualifying Facility providing
> scheduled and dispatchable electricity in forward-looking time blocks.  The energy
> storage system that comprises the energy storage Qualifying Facility is designed to,
> and will, receive 100% of its energy input from a combination of renewable energy
> sources such as wind, solar, biogas, biomas, etc.  The current initial design utilizes
> solar photovoltaic (PV) modules mounted to single-axis trackers to provide the
> electric energy input to the Qualifying Facility's battery storage system.  The PV
> modules are planned to be connected in series/parallel combinations to solar
> inverters, rated approximately 2.5 MWac each, (subject to change).  The proposed
> electric energy storage Qualifying Facility will consist of an electro-chemical
> battery and will have a maximum power output capacity of 25 MWac for a
> sustained time period of 5 – 60 minutes.  The Facility will consist of an alternate
> current (AC) to direct current (DC) control system.  The Qualifying Facility will be
> utilized to provide the purchasing utility with pre-scheduled and dispatchable AC
> energy within pre-determined time blocks.  The sole source of electric power and
> energy provided to the purchasing utility will be the electro-chemical reaction
> giving rise to the discharge of electric power and energy by the battery.  In turn, the
> sole direct source of energy input to the battery Facility will be, as described above,
> renewable sources.[5]

51.    Thus, the Franklin Energy Storage Qualifying facilities are self-certified as "energy

storage Qualifying Facilities."

52.    No party, including the Idaho Commission or Idaho Power, has challenged the

status of the Franklin energy storage Qualifying Facilities at FERC or before any other tribunal.

53.    FERC has ruled that energy storage facilities are a separate and distinct class of

QFs.  In *Luz Dev. & Fin. Corp.,* 51 FERC ¶ 61,078 (1990) FERC declared:

> In sum, energy storage facilities such as the **proposed Luz battery system are a
> renewable resource for purposes of QF certification.**  However, such facilities

---

[5] Form 556 at ¶7h, FERC Docket Nos. QF17-581 – 584.

Complaint for declaratory judgment and order implementing the same.

13.

are subject to the requirement that the energy input to the facility is itself biomass, waste, a renewable resource, a geothermal resource, or any combination thereof or a demonstration that any fossil fuel-fired input constitutes no more than 25 percent of the total energy input to the facility and such uses are consistent with those enumerated in section 3(17)(B) of the FPA. (emphasis supplied)

54.     The Franklin Energy Storage Facilities each exclusively uses a renewable resource energy input as required by FERC, and hence has establish its status as a "renewable resource for purposes of QF certification" as required by FERC orders.

55.     In response to Idaho Power's Petition for Declaratory Order, the Idaho Commission ruled that the Franklin Energy Storage Facilities are not entitled to published avoided cost rates and twenty-year contracts as are all "other QFs."

56.     Because the Idaho Commission found that the Franklin Energy Storage batteries are energized with solar energy, it concluded they are only entitled to the solar or wind avoided cost rates and contract terms and conditions.

57.     The Idaho Commission's ruling violates the FERC's ruling that energy storage facilities are a distinct class of QFs and are hence entitled to all of the benefits flowing therefrom.

## VIII.

## CLAIM FOR RELIEF

58.     Wherefore, Plaintiffs pray judgment as follows:

59     Declaratory and injunctive relief directing Defendant to implement PURPA in a lawful manner by recognizing the QF status of energy storage QFs as distinct from their energy input (source).

Complaint for declaratory judgment and order implementing the same.

14.

60.    Declaratory and injunctive relief directing Defendant to require the utilities under its jurisdiction to afford energy storage QFs all rights and privileges afforded to "all other" QFs – other than wind and solar QFs.

61.    All attorneys' fees, costs, and interest available under law (including Idaho Code § 12-117) and equity.

62.    Such other and further relief as may be meet and equitable in the premises.


Dated this 30th day of May 2018.


_____/s/ Robert C. Huntley, Esq_____
Robert C. Huntley, Esq.

_____/s/ Peter J. Richardson, Esq._____
Peter R. Richardson, Esq.

Attorneys for Plaintiffs


Complaint for declaratory judgment and order implementing the same.

15.