Peter J. Richardson, ISB# 3195
515 N. 27th Street
Boise, Idaho 83702
Telephone (208) 938-7901
Facsimile: (208) 938-7904
peter@richardsonadams.com

Robert C. Huntley, ISB# 894
R. HUNTLEY LAW, PLLC
950 W. Bannock St., Ste. 600
Boise, ID 83701
Telephone (208) 388-1230
Facsimile (208) 388-0234
rhuntley@huntleylaw.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| FRANKLIN ENERGY STORAGE ONE, LLC, FRANKLIN ENERGY STORAGE TWO, LLC FRANKLIN ENERGY STORAGE THREE, LLC, FRANKLIN ENERGY STORAGE FOUR, LLC<br><br>Plaintiffs,<br>vs.<br><br>PAUL KJELLANDER, KRISTINE RAPER and ERIC ANDERSON, in their official capacity as Commissioners of the IDAHO PUBLIC UTILITIES COMMISSION,<br><br>Defendants. | Case No.: 1:18-cv-00236-REB<br><br>PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

//

//

//

//

//

//

//

Franklin Energy Storage – Brief in Support of Motion for Summary Judgment.

i.

## TABLE OF CONTENTS

TABLE OF AUTHORTIES................................................................................iii

TABLE OF ACRONYMS................................................................................iv

PLAINTIFF'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT................................................................1

    Part I: Overview PURPA and the Idaho PUC's Duties Thereunder.............................1

    Part II: Statement of Issue The Idaho PUC Oversteps its Authority.............................1

    Part III: The IPUC's Implementation Only Contemplates Two Classes of
        QF – (1) Wind/Solar and (2) All Other.............................2

    Part IV: Preemption: The IPUC's Classification of the Franklin Projects QF Status
        is Preempted by PURPA, FERC's Regulations and Established Ninth Circuit
        Court of Appeals Precedent.............................5

    Part V: Not a "Frivolous" Legal Machinate, *Independent Energy Producers v. CPUC*
        is Controlling Precedent.............................9

    Part VI: The PUC's Two Orders A.K.A. the Idaho PUC's Slight of Hand.............................12

    Part VII: Irreconcilable Conflict: Conflict Preemption.............................14

    Part VIII: Conclusion and Relief Sought.............................15

Franklin Energy Storage – Brief in Support of Motion for Summary Judgment.

ii.

# CASES AND AUTHORITIES

**Cases**                                                                                    **Page**

*Brazos Electric Power Cooperative v. FERC,* 205 F.3d 235 (5th Cir. 2000)          1

*FERC v. Mississippi,* 456 U.S. 742, (1982)                                          1, 2

*Indep. Energy Producers Ass'n v. California Pub. UItil. Comm'n,*
36 F.3d 848 (9th Cir. 1994)                                                        8, 9, 11, 13, 14

*Luz Development and Finance Corporation,* 51 FERC ¶ 61,078 (1990),                  8, 7, 12, 10,
                                                                                     13

*Power Res. Group v. FERC* 422 F.3d 231 (5th Cir. 2005)                            1

*Re: California Public Utilities Commission,*  133 FERC ¶ 61,059 (2010)              7

*Silkwood v. Ker-McGee Corp.,* 464 U.S. 238 (1984).                                  14

**Statutes and Other Authorities**

*Public Utilities Regulatory Policies Act of 1978,*
 16 U.S.C. §§ 796 and 824a-3 *et. seq.*                                              1

16 U.S.C. § 824a-3(a)                                                                1

16 U.S.C. § 824a-3(f)                                                                1, 2

18 C.F.R. § 385.207(a)(2)                                                            12

**Idaho Public Utilities Commission Orders**

Order No. 32697, Docket No. GNR-E-11-03                                              6

Order No. 33357, Docket No. IPC-E-15-01                                              6

Order No. 33785, Docket No. IPC-E-17-01                                              2, 3, 6,
                                                                                     11, 12

Order No. 33858, Docket No. IPC-E-17-01                                              2, 8

Franklin Energy Storage – Brief in Support of Motion for Summary Judgment.

iii.

## TABLE OF ACRONYMS

FERC            Federal Energy Regulatory Commission

kW              Kilowatt

IPUC            Idaho Public Utilities Commission

PURPA           Public Utilities Regulatory Policies Act of 1978

QF              Qualifying Facility

Franklin Energy Storage – Brief in Support of Motion for Summary Judgment.

iv.

## PLAINTIFF'S BRIEF IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

## PART I: OVERVIEW
## PURPA AND THE IDAHO PUC's DUTIES THEREUNDER

This case concerns Idaho's implementation of a federal statute and regulations requiring public utilities to purchase energy generated by a select class of generators. The facts of this case are not in dispute. Congress enacted the Public Utilities Regulatory Policies Act of 1978 ("PURPA")[1] to reduce the dependence of electric utilities on foreign oil and natural gas, in part by encouraging the development of alternative energy sources such as cogeneration and small power production facilities called "Qualifying Facilities" or "QFs". *Brazos Electric Power Cooperative v. FERC,* 205 F.3d 235, 237 (5th Cir. 2000); see also *FERC v. Mississippi,* 546 U.S. 742, 745 – 746 (1982) and *Power Res. Group v. FERC* 422 F.3d 231, 233 (5th Cir. 2005). PURPA directs the Federal Energy Regulatory Commission ("FERC") to promulgate regulations promoting the purchase by utilities of energy produced by QFs. 16 U.S.C. § 824a-3(a). State regulatory agencies, such as the Idaho Public Utilities Commission ("IPUC"), are directed to implement PURPA by either adopting rules or by resolving disputes in a manner which complies with FERC's regulations. 16 U.S.C. § 824a-3(f).

## PART II: STATEMENT OF ISSUE
## THE IDAHO PUC OVERSTEPS ITS AUTHORITY

The issue before the Court is simply stated:

---

[1] *Public Utilities Regulatory Policies Act of 1978,* 16 U.S.C. §§ 796 and 824a-3 *et. seq.*

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

1.

Since PURPA preempts the IPUC from determining QF status, may the IPUC properly deny 20-year energy sales and purchase agreement rights of the four Plaintiff QFs which rights are vested in them under PURPA?

Plaintiff's establish below that the IPUC has impermissibly intruded into an area exclusively reserved by PURPA to the Federal Energy Regulatory Commission by its inquiry into the energy source(s) proposed to be utilized by the Franklin Energy Storage QFs.

## PART III:
## THE IPUC's PURPA IMPLEMENTION ONLY CONTEMPLATES TWO CLASSES OF QF – (1) WIND/SOLAR AND (2) ALL OTHER

This case concerns the IPUC's failure to properly implement PURPA. Pursuant to PURPA, FERC promulgates regulations to effectuate the policy goals of the United States Congress by encouraging the development of cogeneration and small power production facilities. *FERC v. Mississippi,* 456 U.S. 742, 750, 72 L.Ed. 2d 532, 102 S. Ct. 2126 (1982). In turn, Section 824a-3(f) of PURPA requires state regulatory agencies, like the Idaho PUC, to implement FERC's regulations. Here the IPUC has violated PURPA, and FERC's PURPA regulations, in two orders[2] implementing the same for a distinct class of Qualifying Facilities -- Energy Storage QFs. Prior to issuing the two orders that are the subject of this proceeding, the IPUC had never specifically addressed in any of its orders or rules, Energy Storage QFs.

The two IPUC orders at issue in this case are Order No. 33785 (Original Order) and Order No. 33858. (Reconsideration Order). The Original Order (33785) was issued by the IPUC in response to Idaho Power's Petition for Declaratory Order "determining the proper contract terms,

---

[2] IPUC Order No. 33785 and 33858, IPUC Docket No. IPC-E-17-01, issued on July 13, 2017, and August 29, 2018, respectively. *See,* Defendant's Exhibits 6 and 7, respectively, filed 6/25/18. Document Nos. 1:18-cv-00236-REB Document 4-6 ("Original Order") and Document 4-7 ("Reconsideration Order").

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

conditions, and avoided cost pricing to be included in …contracts for battery storage facilities requesting contracts under the Public Utilities Regulatory Policies Act of 1978."[3]   In its Original Order No. 33785,[4] the IPUC summarized the implementation scheme it had previously established for determining a QF's avoided cost rates and contract terms:

> This Commission [IPUC] has established two methods of calculating avoided cost, depending on the size of the QF project: (1) the surrogate avoided resource (SAR) methodology, and (2) the integrated resource plan (IRP) methodology.[5] [citation omitted] The Commission uses the SAR methodology to establish standard or "published" avoided cost rates. [citation omitted] Currently, the eligibility cap for wind and solar QFs to access published avoided cost rates is set at 100 kilowatts (kW). QF projects other than wind and solar are subject to a published rate eligibility cap of 10 average megawatts (aMW).[6] [Citation omitted].
>
> In 2015, this Commission reduced the term for individually-negotiated PURPA contracts (those not subject to published rates) in Idaho from 20 years to 2 years. [citation omitted] The contract term for published rate contracts remains at 20 years.[7]

Simply stated, if a wind or solar QF is 100 kW or smaller it is entitled to published rates and a twenty-year contract.  If a wind or solar QF is larger than 100 kW its rates are set using the IRP methodology and that QF is only entitled to a two-year contract.  QF projects "other than wind or solar" that are 10,000 average kW or smaller are entitled to published rates and a twenty-year

---

[3] *See* Defendant-Intervenor Idaho Power Company's Memorandum in Support of its Motion to Intervene at Declaration of Donovan E. Walker at Exhibit 10, p. 1.  Case 1:18-cv-00236-REB Document 7-5 at p. 54.

[4] Document No. 1:18-cv-00236-REB Document 4-6

[5] The details associated with the two methodologies noted are not at issue in this case.

[6] Each of the Franklin QFs' estimated output falls below the 10 aMW capacity cap, which is measured on a monthly average basis.  While each of the Franklin Energy Storage QFs has a nameplate (theoretical) capacity of greater than 10 megawatts, each has an actual average monthly output of less than 10 megawatts.  The size estimation of the projects was not at issue before the IPUC.

[7] Document Nos. 1:18-cv-00236-REB Document 4-6 Order No. 33785 at pages 2 – 3, underscoring provided.

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

3.

contract. If a QF "other than wind or solar" is larger than 10,000 average kW, its rates are set using the IPR methodology and it is only entitled to a two-year contract. Each of the Franklin Energy Storage Projects is smaller than 10,000 average kW.

In establishing its policy for determining entitlement to either twenty-year contracts or two-year contracts, the Commission established a simple dichotomy between solar/wind QFs and all QFs other than wind/solar. However, in creating this dichotomy, the Commission did not contemplate the possibility of energy storage QFs. Indeed, the Idaho Commission has never mentioned energy storage QFs in any of its prior orders implementing PURPA. The Idaho Commission made this point clear in its protest before FERC in this matter. According to the IPUC's protest filed at FERC:

> Until Idaho Power petitioned the Idaho PUC for declaratory relief regarding Franklin's requested PURPA contracts, the Idaho PUC had not yet considered the eligibility cap for a battery storage QF to receive standard avoided cost rates and associated terms and conditions in a PURPA contract.

And:

> In deciding which QF resource types should have a lower eligibility cap, the Idaho PUC specifically considered biomass, small hydro, cogeneration, geothermal, and waste-to-energy . .. The Idaho Commission did not address battery storage.[8]

The Idaho Commission had implemented its policies for setting avoided cost rates and determining contract terms based on a dichotomy that did not explicitly contemplate energy storage QFs. Thus, when faced with the question of how such QFs fit into its rigid dichotomy, it had just three choices. First, it could have initiated a process through which it could implement an

---

[8] *Notice of Intervention and Protest of the Idaho Public Utilities Commission,* FERC Docket No. EL18-50, Jan. 16, 2018 at pp 8 – 9. Richardson Decl. at Exhibit 1. (Emphasis provided.)

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

4.

avoided cost methodology and contract terms explicitly for energy storage QFs[9]. Second, it could

have simply ruled that "other than wind and solar" means exactly what is says – e.g. all QFs other

than wind or solar are entitled to published rates and twenty-year contracts, which would implicitly

and naturally include energy storage QFs. The Idaho Commission chose a third, and decidedly

unsustainable, route by including the Franklin energy storage QFs in its classification of solar QFs.

It did so based entirely upon the Franklin projects' primary energy input – solar energy. This it

may not do. While, the first two options open to the Commission may have been legally defensible,

the third option is beyond the jurisdiction of the IPUC. Only FERC may adjudicate QF status.

The Idaho PUC's inexplicable reclassification of the Franklin QFs based on their primary energy

input infringes on FERC's exclusive jurisdiction as to QF status. Such action is preempted by

PURPA and FERC's implementing regulations.

## PART IV: PREEMPTION:
## THE IPUC'S CLASSIFICATION OF THE FRANKLIN PROJECTS QF STATUS IS PREEMPTED BY PURPA, FERC's REGULATIONS AND ESTABLISHED NINTH CIRCUIT COURT OF APPEALS PRECEDENT

Plaintiffs are each a self-certified QF pursuant to FERC regulations as an "energy storage

system Qualifying Facility" QF."[10] The IPUC's PURPA implementation orders provide that all

QFs "other than wind and solar" QFs (up to ten average monthly megawatts in size) are entitled to

---

[9] Indeed, this is what Idaho Power asked the Commission to do in its Petition for Declaratory order, quoted above. *See* footnote 3, *supra*.

[10] Franklin Energy Storage One, LLC, FERC Docket No. QF17-581; Franklin Energy Storage Two, LLC, FERC Docket No. QF17-582; Franklin Energy Storage Three, LLC, FERC Docket No. QF17-583; and Franklin Energy Storage Four, LLC, FERC Docket No. QF17-584. *See* Defendant's Exhibits 8, 9, 10 and 11, respectively, filed 6/25/18. Document Nos. 1:18-cv-00236-REB Document 4-8, 4-9, 4-10 and 4-11.

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

'standard offer' twenty-year contracts.[11] On the other hand, solar and wind QFs that are larger than 100 kW are only entitled to two-year 'standard offer' contracts under the Idaho PUC's PURPA implementation scheme.[12]   Each Plaintiff, (as an "other than solar or wind QF") separately sought a twenty-year PURPA standard offer contract from Idaho Power Company. (Walker Decl. at Exhibits 1, 2, 3 and 4).[13]

Idaho Power did not respond directly to the Franklin Projects requests for standard offer twenty-year QF contracts. Instead, Idaho Power sought a declaratory ruling from the IPUC that:

> T]he Commission [IPUC] issue a declaratory order, without prejudice to Idaho Power's position on the validity of the underlying self-certifications, finding that, under the facts presented, the Proposed Battery Storage Facilities are subject to the same 100 kW published avoided cost rate eligibility cap applicable to wind and solar facilities." [14]

Importantly, in its original order (Order No. 33785) the Idaho Commission did not make a finding on Idaho Power's specific request that it subject battery storage "Facilities" to the same eligibility cap "applicable to wind and solar facilities." Instead the Idaho Commission reclassified the "Battery Storage Facilities" based on their "primary energy source." The Idaho Commission stated that:

> We find it appropriate to base Franklin's ... eligibility under PRPA on its primary energy source - solar. Solar resources larger than 100 kW are entitled to negotiate two-year PURPA contracts through the use of Idaho's IRP methodology.[15]

---

[11] IPUC Order No. 32697 issued in Docket No. GNR-E-11-03. Document Nos. 1:18-cv-00236-REB Document 4-14.

[12] IPUC No. Order 33357 issued in Docket No. IPC-E-15-01 on 8/20/15. Document No. 1:18-cv-00236-REB Document 4-4.

[13] Document No. 1:18-cv-00236-REB Document Nos. 7-3, 7-4 and 7-5. (Document 7-3 contains Walker Decl. Exhibits 2 and 3. Documents 7-4 and 7-5 each only contain a single Walker Decl. Exhibit, No. 3 and 4 respectively.)

[14] *See* Defendant-Intervenor Idaho Power Company's Memorandum in Support of its Motion to Intervene at Declaration of Donovan E. Walker at Exhibit 10, p. 1. Case 1:18-cv-00236-REB Document 7-5 at p. 66.

[15] IPUC Order No. 33785 at p. 12, Original Order. *See fn 3 supra.*

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

In reaching this conclusion, the Idaho Commission simply disregarded that energy storage QFs have been established by FERC as distinct QFs and instead looked beyond the face value of the QF certification to decide that the Franklin Energy Storage QFs are only entitled to treatment as solar QFs under the Idaho implementation scheme.

The Idaho Commission could have initiated a proceeding to establish avoided cost rates and terms and conditions of contracts for energy storage facilities. Indeed, a recent FERC decision, affords states the flexibility necessary to set resource-specific avoided cost rates through PURPA.[16] But the Idaho Commission did not set resource-specific avoided cost rates for energy storage QFs, and Franklin does not assert that the Idaho Commission may not do so. However, to do so would require the Idaho Commission to go through the trouble of initiating a proceeding to determine the appropriate avoided cost rates for storage projects. That would have required prior notice and other indicia of due process such that the Franklin projects' contract requests would have preceded the adoption of any new implementation scheme specific to energy storage QFs. Hence, they would be entitled to grandfather status under the existing Idaho Implementation plan which includes all QFs other than solar and wind in the category of QFs eligible for twenty-year contracts.

The Franklin Projects duly Petitioned the Idaho Commission to reconsider its decision. (Richardson Decl., Exhibit No. 2.) The Projects asserted on reconsideration that they are neither wind nor solar QFs and are hence entitled to contract terms and conditions reserved for "all other projects" pursuant to the IPUC's 'standard offer' published avoided cost regime. The Franklin Projects also directed the IPUC's attention on reconsideration to established FERC precedent,

---

[16] *Re: California Public Utilities Commission,* 133 FERC ¶ 61,059 (2010).

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

7.

citing to *Luz Development and Finance Corporation* 51 FERC ¶ 61,078 (1990), to the effect that; (1) energy storage systems are distinct QFs in their own right; and (2) controlling Ninth Circuit Court of Appeals precedent, *Indep. Energy Producers Ass'n v. California Pub. UItil. Comm'n,* 36 F.3d 848 (9th Cir. 1994), to the effect that state PUC commissions are preempted by federal law from questioning (or even inquiring) into the validity of a QF's status – a role that the Ninth Circuit Court declared in *Indep. Energy Producers* is reserved exclusively to FERC under PURPA.

The Idaho Commission's reconsideration order[17] noted the existence of the FERC and Ninth Circuit decisions in passing but completely disregarded their import.  The IPUC characterized Franklin's reliance on the Ninth Circuit's precedent in *Independent Energy Producers v. CPUC* as a "frivolous effort to contrive a legal basis for reconsideration".[18]  It likewise acknowledged the fundamental finding in FERC's *Luz* decision (that energy storage systems are distinct QFs) but completely disregarded that basic precept by asserting that it may actually look to the underlying energy source of the storage system to determine the nature of the QF itself.  According to the Idaho Commission in its order on reconsideration:

> In the Final Order, we explicitly recognized that "battery storage facilities' QF status is a matter with FERC's jurisdiction" and we acknowledge the self-certifications of Franklin's QFs. . . . Consistent with FERC's analysis in *Luz,* we looked to the primary energy source of Franklin's battery storage QFs to determine the projects' eligibility to particular avoided cost rates and contract terms.[19]

The Idaho Commission frankly admitted that it looked to the QF's energy source to determine its eligibility for PURPA benefits ("avoided cost rates and contract terms.")  This it may not do.  The Idaho Commission is prohibited from questioning the validity of the QF's assertion that it is, in

---

[17] IPUC Order No. 33858.  Reconsideration Order, *Supra* at fn 2.
[18] *Ibid.* at p. 3.
[19] *Id.*

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

fact, a QF. As explained in detail below, the Ninth Circuit Court of Appeals has determined that the only entity with the legal authority to make an inquiry as to the energy inputs necessary to qualify a facility as a QF is FERC. States are preempted from making such determinations.

## PART V: NOT A "FRIVOLOUS" LEGAL MACHINATE
## *INDEPENDENT ENERGY PRODUCERS V. CPUC*
## IS CONTROLLING PRECEDENT

The similarity as to issues and facts in the Ninth Circuit case, *Independent Energy Producers*, make it persuasive precedent. As is the case with the Idaho PUC, in *Independent Energy Producers*, the California PUC had established a system by which QFs would be entitled to 'standard offer' contracts[20] that contain standardized contract terms and established standard offer prices to be paid to QFs for electric energy. Also like the Idaho PUC, the California PUC made these standard contracts available to certain classes of QFs. If the California QF fit into a pre-defined class of QF it was entitled to the standard offer contract at standard offer prices for that class of QF. Similarly, under the Idaho PUC's implementation of PURPA, if a QF fits into one of two pre-defined classes of QF (either "wind/solar" or "all other") it also is entitled to a standard offer contract and standard offer prices based on which of the two classes it falls into. The two classes of QFs entitled to distinct Idaho approved avoided cost and contracting treatment are (1) wind/solar QFs and (2) all other QFs.

The California PUC subsequently had a case of buyer's remorse and, upon deciding the avoided cost rates it had set were too high, authorized the utilities it regulated to determine if QFs were complying with PURPA in maintaining their QF status. In other words, the California PUC was, by authorizing its regulated utilities to do so, actually making QF status determinations.

---

[20] *Independent Energy Producers*, supra, at 851.

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

9.

The district court in California ruled in favor of the CPUC, finding that "the states may play a role in monitoring and enforcing compliance with QF requirements." However, the Ninth Circuit overturned the district court. The Ninth Circuit explained:

> In 1991, the CPUC adopted the monitoring program that gave rise to this action. Under this program, the CPUC authorized the Utilities to monitor the compliance of the QFs from which they purchase electric energy to ensure that they are in compliance with federal operating and efficiency standards.[21]

The Ninth Circuit specifically overturned the district court [22] and established that FERC "exercise[s] exclusive authority over QF status determinations." [23] Hence, to the extent the Idaho Commission makes any QF status determination, such a determination is preempted by federal law. According to the Ninth Circuit:

> [B]ecause the CPUC program authorizes the Utilities to make QF status determinations, and thus to intrude into an area of exclusively federal regulation, it is preempted by federal law . . . The structure of PURPA and the Commission's [FERC] regulations, reflect Congress's express intent that the Commission [FERC] exercise exclusive authority over QF status determinations. [24]

Likewise, the Idaho Commission is prohibited from 'looking under the hood' to question the status of a FERC certified QF. If the Idaho Commission believes that a QF's status, or its energy inputs, are questionable or doubtful its *only* recourse is to complain to FERC. It may not take it upon itself to make any determination as to the nature of a QF – including whether the QF's underlying energy source complies with PURPA or not. Of course, the very foundation of the Idaho Commission's declaratory order is its examination (beyond the face value of the QF's certification

---

[21] *Ibid.* at 852.
[22] *Idid..* at 853.
[23] *Id.*
[24] *Id.*

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

10.

as energy storage facilities) into the underlying energy input to the storage systems. The Idaho Commission freely admits that it made exactly the type of inquiry that is expressly prohibited to it under federal law. According to the Idaho Commission:

> FERC confirmed that energy storage facilities are not renewable resources/small power production facilities *per se*. Electric input is required to produce electric output from a storage facility. [citation omitted]. <u>For this reason, in order to qualify as a PURPA resource, the primary energy source behind the battery storage must be considered</u>. We must, then, look to Franklin's . . . primary energy sources in order to determine their eligibility under PURPA.[25]

The Idaho Commission is preempted from making any determination as to a QF's ability to "qualify as a PURPA resource." Indeed, were states able to make independent determinations as to a facility's ability to qualify under PURPA it would undermine one of the cornerstones of that important federal statute. The Ninth Circuit was clear on the need to have a single arbitrator (FERC) as to QF status:

> It is the Commission's [FERC] role, not the state's or utilities' role, to determine that QFs that have received certification from the Commission no longer meet federal operating and efficiency standards. A utility may not change the contractual obligations between the QF and the utility based on such a determination. The Commission has explicitly provided comprehensive procedural mechanisms under which QFs may be officially certified and decertified by the Commission; to permit states or utilities to challenge the compliance of QF outside of the procedure established by the Commission could result in determinations that are inconsistent with the federal scheme and would, in effect afford certification by the Commission little or no deference.[26]

Here the Idaho Commission gave no deference to the QF status of the Franklin projects and instead actually questioned their Energy Storage status based on its independent inquiry into the source of energy that charges the storage system. This it may not do.

---

[25] Original Order No. 33785 at p. 11. Emphasis provided.
[26] *Independent Energy Producers*, Supra at p. 855.

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

11.

FERC, as the sole and final arbitrator as to QF status, has ruled that energy storage systems

are distinct QFs in their own right.[27]  The Franklin Energy Storage projects are self-certified at

FERC as energy storage QFs.[28]  Pursuant to the Ninth Circuit in *Independent Energy Producers,*

(discussed above) the Idaho Commission may not challenge or question QF status (except at

FERC[29]) and it must therefore accept at face value the QF status of the Franklin projects.

Furthermore, it may not change the established contractual obligations[30] accorded to the QF based

on any "such determination" as to the QF status of the projects.  FERC has also established strict

standards as to the type of energy (renewable only) that may be used to charge the storage system

in order for it to qualify as a QF.  However, if those strict standards are met (as determined by

FERC alone) the energy storage system is, according to FERC, a renewable resource "for purposes

of QF certification."[31]

**PART VI: THE PUC's TWO ORDERS
A.K.A.THE IDAHO PUC's SLIGHT OF HAND**

As noted above, and as readily conceded by the IPUC, all QF types fall into only one of

two sides of the IPUC's dichotomy for determination of entitlement to published rates.  On one

side of the dichotomy are wind/solar QFs.  The other side of the dichotomy is the catch-all class

that includes "all other" QFs.  Energy storage QFs were not contemplated by the IPUC when it

---

[27] *Luz Development and Finance Corporation,*  supra at p. 6.

[28] *See* fn 10, *supra*.

[29] The Idaho Commission is free to petition FERC for a declaratory order regarding a particular project's QF status. *See* 18 C.F.R. 385.207(a)(2).

[30] Here, contract obligations for "other QFs" had been previously established under the Idaho Commission's implementation of PURPA – which are twenty-year contracts at published rates. IPUC Original Order No. 33785 at pp  2 – 3.

[31] *Luz Development and Finance Corporation,* Supra, at p.6.

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

12.

created this dichotomy.  When faced with the question of which side of the ledger to put the

Franklin QFs it chose the wind/solar side because, according to the Commission, it:

> [c]onsidered the Franklin QFs' primary energy source in evaluating the types of benefits
> the QFs would qualify for under PURPA – that is, the QFs' applicable avoided cost rates
> and contract terms.  Given the record[32] before it, the Idaho PUC found the Franklin QFs
> are primarily energized by the sun, with energy generating output profiles that directly
> reflect the solar generation operating as their primary energy source.  The Idaho PUC thus
> determined the 100 kW eligibility cap (used for solar QFs) should apply to Franklin.[33]

Each of the Franklin QFs are certified at FERC as "an energy storage system QF" and no

party has challenged or questioned their status as such.[34]  Ignoring the undisputed fact that the

Franklin QFs are certified at FERC as "energy storage" QFs, the Idaho Commission freely admits

that it applied the "eligibility cap (<u>used for solar QFs</u>)" in implementing, for the first time, an

avoided cost contract/term policy for energy storage QFs.  That new implementation policy

disregards the energy storage QF status of the Franklin projects and instead looks to the underlying

energy source that charges the storage system.  Such an implementation scheme violates FERC's

unequivocal rulings that energy storage QFs are stand alone distinct QFs entitled to all the

privileges and benefits federal law affords them.

PURPA grants FERC exclusive authority over QF status determinations.  In *Indep. Energy*

*Producers Ass'n, Inc. v. Cal Pub. Utilities Comm'n,* 36 F.3d 848 (9ᵗʰ Cir. 1994) the Ninth Curcuit

---

[32] The Commission's use of the phrase "record before it" should not be confused to be understood
that there is an evidentiary record upon which the Commission based its decision.  There is none.
There is no testimony, affiants or affidavits, discovery requests or responses or any other iota of a
record remotely resembling an evidentiary record.  Rather, the "record" the Commission refers to
are the legal pleadings and arguments engendered by Idaho Power's petition for a declaratory
order.  There is no factual record upon which the Commission based its decision.
[33] Richardson Decl. Exhibit 1. *Notice of Intervention and Protest of the Idaho PUC,* FERC Docket
No. EL18-50 at p. 11.  Citations omitted.  Parenthetical in original.
[34] Defendants so admit in their answer to Paragraph 53 of the Complaint.

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

13.

Court of Appeals ruled that "The structure of PURPA and the Commission's regulations, reflect Congress's express intent that the Commission [FERC] exercise exclusive authority over QF status determinations." *Id.* at 853-854.

## PART VII: IRRECONCILABLE CONFLICT: CONFLICT PREEMPTION

Conflict preemption has been explained as follows: "If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Ker-McGee Corp* 464 U.S. 238, 248 (1984). The impossibility of complying with the State of Idaho's policy that the primary energy source determines QF status is easily illustrated. The Franklin QFs are not required to use solar energy to charge their batteries. They can use any renewable energy source and they have specifically reserved that right in their form 556's. As discussed above, the preemption of the State of Idaho's attempt to classify a QF is absolute and unequivocal. However, the Franklin Energy Storage projects highlight the practical impossibility of a QF having to comply with both FERC's standard and the state's imposed standard for QF qualification.

The Franklin Projects, as energy storage projects, may utilize any renewable resource (in any amount) to energize their battery arrays.[35] However, according to the Idaho Commission, an energy storage QF is classified pursuant to the "primary energy source" that is used to energize the battery arrays.[36] Although the primary energy source *proposed* for the Franklin projects is

---

[35] *Luz, supra,* at p. 5.
[36] Order No. 33785 at p. 12.

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

14.

currently solar, it may, at any time in the future, add or even substitute different energy sources.

According to the FERC Form 556 that was filed by each of the Franklin Projects:

> The energy storage system that comprises the energy storage Qualifying Facility is designed to, and will, receive 100% of its energy input from a combination of renewable energy sources such as wind, solar, biogas, biomas, etc. The current initial design utilities solar...

Thus, should one of the Franklin Projects choose to augment half of the energy input to the battery array using energy generated with, for example, a biogas generator, the Idaho Commission's ruling would be impossible to comply with as there would be no "primary energy source." Further compounding the impossibility of complying with the Idaho Commission's decision would be the situation where the solar and biomass input varies each year (or month or day or even hour) such that at sometimes the solar input would be primary and at other times the biogas input would be primary. Of course, the FERC designation of an energy storage QF only requires that the energy input be sourced from a (a.k.a. any) renewable source regardless of the magnitude of the mixture of renewable energy sources.

This conflict between compliance with the Idaho Commission's order and FERC's standard for energy storage QF status is impossible to reconcile. There simply is no room in the regulatory arena for both the Idaho Commission and the Federal Energy Regulatory Commission to make independent, and in this case, conflicting determinations of QF status.

## PART VIII: CONCLUSION AND RELIEF SOUGHT

Plaintiff's respectfully request entry of Summary Judgment in favor of Plaintiff's declaring and requiring the Defendants honor Plaintiff's "QF" status and require Idaho Power to tender twenty (20) year contracts at published rates consistent with their status as "other QF" pursuant to

Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.

15.

established IPUC requirements together with an award to Plaintiff's of their attorney fees and

costs, and such other relief as may be appropriate and equitable in the premises.

Respectfully submitted this 5th day of Septebmer 2018.


_/s/ Robert C. Huntley, Esq_
Robert C. Huntley, Esq.


_/s/ Peter J. Richardson, Esq._
Peter R. Richardson, Esq.

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of September, 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties and counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Brandon Karpen
Brandon.karpen@puc.idaho.gov
Edith Pacillo
Edith.pacillo@puc.idaho.gov
Scot Zanzig
Scott.zanzig@ag.idaho.gov
Attorneys for Defendants

Steven B. Anderson
sha@aswblaw.com
Wade L. Woodard
wlw@asbblaw.com
Attorneys for Defendant-Intervenor Idaho Power Company


_/s/ Peter J. Richardson, Esq._
Peter R. Richardson, Esq.


Franklin Energy Storage - Brief in Support of Motion for Summary Judgment.