UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| FRANKLIN ENERGY STORAGE ONE, LLC, FRANKLIN ENERGY STORAGE TWO, LLC, FRANKLIN ENERGY STORAGE THREE LLC, FRANKLIN ENERGY STORAGE FOUR, LLC,<br><br>    Plaintiffs,<br><br>    vs.<br><br>PAUL KJELLANDER, KRISTINE RAPER, and ERIC ANDERSON, in their official capacity as Commissioners of the IDAHO PUBLIC UTILITIES COMMISSION,<br><br>    Defendants,<br><br>and,<br><br>IDAHO POWER COMPANY,<br><br>    Defendant-Intervenor. | Case No.: 1:18-cv-00236-REB<br><br><br><br><br>**MEMORANDUM DECISION AND ORDER RE: MOTIONS TO DISMISS AND CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(DKTS. 24, 39, 40, 42)** |

<u>**SUMMARY OF DECISION**</u>

The Plaintiffs propose to build small power production facilities utilizing batteries to store power from renewable energy sources and then release such stored power to the power grid. The Plaintiffs have certified in filings made with the Federal Energy Regulatory Commission ("FERC") that their facilities are so-called "Qualifying Facilities," specifically "energy storage Qualifying Facilities." Qualifying Facilities, under provisions of the federal Public Utility Regulatory Policies Act of 1978 (known as "PURPA"), are entitled to sell power to an electric utility (here, Defendant-Intervenor Idaho Power Company) and electric utilities are

**DECISION REGARDING DISPOSITIVE MOTIONS – 1**

required to buy such power on contract terms set by the state's public utility commission (here, the Idaho Public Utilities Commission, or the "IPUC").  Plaintiffs allege that the orders of the Defendant Commissioners of the IPUC exceeded their jurisdictional authority under PURPA by acting to classify Plaintiffs' facilities; that is, to decide whether such facilities were Qualifying Facilities and in classifying such facilities differently than the "energy storage Qualifying Facilities" classification described in Plaintiffs' FERC filings.

The Court agrees with the Plaintiffs that the IPUC Commissioners exceeded their jurisdictional authority under PURPA and acted in violation of applicable federal law.  The Court enjoins any attempt by the Commissioners to enforce the Commissioners' orders in which they acted in excess of their jurisdiction and the Court further orders the Commissioners to comply with the rulings set out in this decision in any future proceedings of the IPUC involving Plaintiffs' energy storage facilities.

## I.  BACKGROUND

The Court decides here the following:

1.  Plaintiffs' Motion for Summary Judgment (Dkt. 24);

2.  Defendant-Intervenor Idaho Power's Motion for Summary Judgment (Dkt. 39);

3.  Defendant-Intervenor Idaho Power's Motion to Dismiss for Lack of Jurisdiction (Dkt. 40); and

4.  Defendants' Motion to Dismiss or in the Alternative Cross-Motion for Summary Judgment (Dkt. 42).

**DECISION REGARDING DISPOSITIVE MOTIONS – 2**

Plaintiffs Franklin Energy Storage One, LLC, Franklin Energy Storage Two, LLC, Franklin Energy Storage Three, LLC, and Franklin Energy Storage Four, LLC,[1] bring this civil action to enforce federal statutes within the Federal Power Act ("FPA") and the Public Utility Regulatory Policies Act of 1978 ("PURPA") and regulations implementing PURPA promulgated by the Federal Energy Regulatory Commission ("FERC").  FAC ¶ 21 (Dkt. 2).  Plaintiffs asked FERC to bring an enforcement action against Defendants and filed this lawsuit after FERC issued a notice that it would not do so.  *Id.* ¶¶ 1–3, 29–30.  Because FERC declined to take up the matter, Plaintiffs have standing to bring their own enforcement action directly.  *Id.* ¶¶ 2, 33; 16 U.S.C. § 824a-3(h)(2)(B).

Plaintiffs contend that the Idaho Public Utilities Commission (the "IPUC"), through its Defendant Commissioners Paul Kjellander, Kristine Raper, and Eric Anderson,[2] issued a series of orders that overreach IPUC's authority under PURPA because the IPUC improperly classified Plaintiffs' Qualifying Facilities ("QFs") in a manner that can only be done by FERC.  FAC ¶ 6 (Dkt. 2).  The dispute between the parties also touches upon long-standing prior orders of the IPUC which give different treatment to QFs, for purposes of the IPUC's responsibilities under PURPA, based upon whether their QF classification was that of (1) wind or solar; or (2) "other QFs."  *Id.* ¶ 8.  Solar and wind QFs are entitled to two-year contracts at negotiated rates, while

---

[1] After the motions resolved in this decision became at issue, Plaintiffs filed a "Notice of Merger and Name Change and Supplemented Corporate Disclosure Statement Supplement" (Dkt. 61) indicating that "each of the Plaintiff LLCs were merged into a newly created LLC known as the Franklin Solar LLC, an Idaho limited liability company."  The Notice indicated that the Plaintiffs' "change in corporate status does not alter any of the legal positions or arguments presented to the court."  This decision refers to Plaintiffs as they were constituted prior to the merger.

[2] The decision refers in some instances to the Defendant Commissioners and sometimes to the "IPUC" for convenience and readability, even though it is only the commissioners of the IPUC, but not the IPUC itself, who are the Defendants in this action.

**DECISION REGARDING DISPOSITIVE MOTIONS – 3**

everything else – the "other QFs" – are entitled to twenty-year contracts and more favorable published nonnegotiable rates. *Id.*

As expressly allowed by PURPA, each Plaintiff previously self-certified its proposed facility as a "small power production facility" by filing FERC Form 556, pursuant to 18 C.F.R. § 292.207.  To qualify for such status, the entity was required to certify on Form 556 that the proposed facility complied with FERC requirements for size and fuel use.  18 C.F.R. §§ 292.203, 292.204.  Each Form 556 filed by Plaintiffs described in paragraph 6a that the primary energy input is "Renewable resources (specify) – Other renewable resource" and further specified in paragraph 7h that the project is an "energy storage system" that will "receive 100% of its energy input from a combination of renewable energy sources such as wind, solar, biogas, biomas [sic], etc."  FERC Forms 556 (Dkts. 4-8 through 4-11).

Plaintiffs proposed to sell the power output from their facilities to Defendant-Intervenor Idaho Power under the terms available to "other QFs."  FAC ¶ 9 (Dkt. 2).  In response, Idaho Power sought a declaratory judgment from the IPUC, asking the IPUC to treat the Plaintiffs' facilities not as "other QFs" (entitled to twenty-year contracts and more favorable rates) but instead as solar QFs (entitled only to two-year contracts at less favorable rates).  *Id.* ¶ 10.  The IPUC agreed and granted Idaho Power's petition.  *Id.* ¶ 12.  In doing so, Plaintiffs contend, the Commissioners acted outside of their proper authority.

Consistent with their Form 556 certifications, Plaintiffs describe their projects as energy storage facilities that store energy power in batteries.  Plaintiffs state that stored energy is provided to the grid at a later time.  Solar panels are identified as the initial source of power going into the batteries; however, Plaintiffs contend that the projects are nonetheless properly classified as energy storage QFs, not as solar QFs.  *Id.* ¶ 9.

**DECISION REGARDING DISPOSITIVE MOTIONS – 4**

The parties agree that PURPA vests FERC with exclusive authority to decide whether an entity qualifies for QF status and the nature of such QF status.  Plaintiffs contend the IPUC overstepped its jurisdictional bounds by doing exactly what PURPA reserves to FERC and does not allow the IPUC to do – *i.e.,* classifying Plaintiffs' energy storage systems *differently* (as "solar QFs") despite Plaintiffs' prior self-certified status as "energy storage QFs."  Plaintiffs contend that their "energy storage QFs" are different than "solar and wind QFs" and thus are properly characterized exactly as they were self-certified – as energy storage QFs and therefore as "other QFs" under prior orders of the IPUC.  *Id.* ¶¶ 7, 9.  Defendants disagree, contending that the IPUC never actually classified Plaintiffs' QFs, but instead only compared them to solar projects in deciding that the power contracts available to Plaintiffs' projects would be the same as those for solar and wind projects rather than the contracts available to "other QFs" under prior IPUC orders and practice.  Answer ¶ 9 (Dkt. 4).

Defendants and Defendant-Intervenor separately move to dismiss this case.  Defendants argue alternatively that (1) this Court lacks subject matter jurisdiction; (2) Plaintiffs' First Amended Complaint lacks facial plausibility; (3) Plaintiffs' claims are time-barred; and (4) the First Amended Complaint is barred by the Eleventh Amendment.  (Dkt. 42.)  Defendant-Intervenor argues alternatively that this Court lacks subject matter jurisdiction and that Plaintiffs failed to timely exhaust their administrative remedies.  (Dkt. 40.)

All parties move for summary judgment.  Plaintiffs seek declaratory and injunctive relief directing Defendants to recognize the QF status of Plaintiffs' projects and requiring Defendant-Intervenor to tender twenty-year contracts at published rates, consistent with all "other QF" projects.  (Dkt. 24.)  Defendants' and Defendant-Intervenor's summary judgment motions echo the arguments presented in their respective motions to dismiss.  (Dkts. 39, 42.)

**DECISION REGARDING DISPOSITIVE MOTIONS – 5**

## II.  <u>LEGAL STANDARDS</u>

### A.  **Standard for Lack of Subject Matter Jurisdiction under F.R.C.P. 12(b)(1).**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the

Court's subject matter jurisdiction.  The party bringing the case in federal court must

demonstrate that jurisdiction is proper in that court.  *See Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U.S. 375, 377 (1994).  Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1)

motion to dismiss for lack of subject matter jurisdiction.  *Sopcak v. Northern Mountain*

*Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).  If there is no subject matter jurisdiction, the

claim must be dismissed.  Fed. R. Civ. P. 12(h)(3).

### B.  **Standard for Failure to State a Claim under F.R.C.P. 12(b)(6).**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is granted if the

complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court "must take all of the factual

allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion

couched as a factual allegation."  *Id.* at 678; *see also Manzarek v. St. Paul Fire & Marine Ins.*

*Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Therefore, "conclusory allegations of law and

unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."

*Caviness v. Horizon Comm. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation

omitted).

**DECISION REGARDING DISPOSITIVE MOTIONS – 6**

**C. Summary Judgment Standard.**

Summary judgment requires a showing that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is "not a disfavored procedural shortcut"; rather, it is the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the court must not make credibility findings. *See id.* at 255. Direct testimony of the non-movant, however implausible, must be believed. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). However, the court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

In deciding cross-motions for summary judgment, the court considers each party's evidence. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011); *see also Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001) ("[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified, and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.").

**DECISION REGARDING DISPOSITIVE MOTIONS – 7**

The court must independently search the record for factual disputes.  *See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).  Even though the filing of cross-motions for summary judgment means that both parties essentially assert that there are no material factual disputes, the Court nonetheless must decide whether disputes as to material fact are present.  *See id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  Affirmative evidence (such as affidavits or deposition excerpts) is not required to meet this burden, as the movant may simply point out the absence of evidence supporting the non-moving party's case.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).  Doing so shifts the burden to the non-movant to produce evidence sufficient to support a favorable jury verdict.  *See Devereaux*, 263 F.3d at 1076.  The non-movant must go beyond the pleadings and show "by [his] own affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex*, 477 U.S. at 324.  Where reasonable minds could differ on the material facts at issue, summary judgment should not be granted.  *See Anderson*, 477 U.S. at 251.

### III.  <u>ANALYSIS AND DECISION</u>

There is considerable overlap in the motions before the Court and in the written filings of the parties in support of their own motions and in response to opposing motions.  Therefore, the Court addresses common issues collectively in this decision, and the Court's analysis of the law and the facts (as necessary) is woven throughout.  Jurisdictional issues are, appropriately, considered first.

**DECISION REGARDING DISPOSITIVE MOTIONS – 8**

A.  **The Parties' Stipulation Regarding Facts and Legal Issues.**

Early on, the Court suggested that the parties submit their dispute on stipulated facts with a common agreement on the legal issues to be decided.  That goal of titrating the facts and the legal issues was not entirely successful.  However, on October 18, 2018, the parties stipulated to certain facts and legal issues pertinent to this case.  (Dkt. 37.)  The stipulated facts are summarized here:

Each of the Plaintiffs – Franklin Energy Storage One, LLC, Franklin Energy Storage Two, LLC, Franklin Energy Storage Three, LLC and Franklin Energy Storage Four, LLC – is a battery storage facility.  The primary energy source of each such facility is solar power.  Each has a nameplate design capacity of 32,000 kilowatts, all of the facilities are to be located on the same site, and all are being developed by Alternative Power Development, LLC.

Defendants Paul Kjellander, Kristine Raper, and Eric Anderson are the Commissioners of the IPUC.  Defendant-Intervenor Idaho Power is an electric utility company.  Idaho Power is regulated by the IPUC and the Public Utility Commission of Oregon, and its operations are subject to the provisions of PURPA, the federal Public Utility Regulatory Policies Act of 1978.[3]

In January 2017, Plaintiffs each filed a Form 556 document with the Federal Energy Regulatory Commission ("FERC").  Form 556 is entitled "Certification of Qualifying Facility (QF) Status for a Small Power Production or Cogeneration Facility."  In the Form 556, each Plaintiff self-certified that it was a battery storage Qualifying Facility.  Following that filing, each Plaintiff submitted to Idaho Power a "Qualifying Facility Energy Sales Agreement Request" (known as a "Schedule 73"), along with a copy of the Form 556 and an energy

---

[3] PURPA encourages the development of alternative energy sources, in part by requiring that public utilities purchase power from alternative energy sources under conditions prescribed by PURPA and implemented by FERC and state utility commissions.

**DECISION REGARDING DISPOSITIVE MOTIONS – 9**

generation output profile.  In the Schedule 73 application, each Plaintiff requested that Idaho Power enter into a 20-year contract to purchase power from its QF at published avoided cost rates – specifically, Rate Option No. 4, Non-Levelized Non-Fueled Rates.

Following Idaho Power's receipt of the Schedule 73 applications and related materials, a series of letters were exchanged between Michael Darrington, an attorney for Idaho Power, and Peter Richardson, an attorney for Plaintiffs.[4]  The letters addressed Idaho Power's position that Plaintiffs' facilities were not entitled to the power purchase contract they sought, and Plaintiffs' response to the same.  On February 27, 2017, shortly after sending the last of such letters, Idaho Power filed a Petition for Declaratory Order with the IPUC pertaining to Plaintiffs' four Schedule 73 applications.  The petition was assigned Case No. IPCE-17-01.  On July 13, 2017, the IPUC issued Order No. 33785 in that case, ruling on Idaho Power's Petition for Declaratory Order.  (Dkt. 4-6.)  On August 3, 2017, Plaintiffs sought reconsideration of that decision, and on August 29, 2017, the IPUC issued Order No. 33858 denying Plaintiffs' Motion for Reconsideration.  (Dkt. 4-7.)

After the IPUC orders were issued, Plaintiffs filed a case before FERC.  Specifically, on December 14, 2017, Plaintiffs filed a Petition for Declaratory Order and Petition for Enforcement Pursuant to Section 210(h) of the Public Utility Regulatory Policies Act of 1978 with FERC (assigned Docket No. EL 18-50-000).  On February 15, 2018, FERC issued a Notice of Intent Not to Act.  On May 30, 2018, Plaintiffs filed their "Complaint for Violation of the Federal Power Act, the Public Utilities Regulatory Policies Act of 1978, and Federal Energy Regulatory Commission Regulations" in this Court (Dkt. 1).  They amended their Complaint the

---

[4] On February 9, 2017, Mr. Darrington sent Mr. Richardson a letter discussing Plaintiffs' four Schedule 73 applications.  On February 10, 2017, Mr. Richardson sent Mr. Darrington a letter in response.  On February 27, 2017, Mr. Darrington responded to that letter.

**DECISION REGARDING DISPOSITIVE MOTIONS – 10**

next day to name as Defendants the individual IPUC commissioners in their official capacities rather than the IPUC itself (Dkt. 2).

The October 18, 2018 stipulation also describes, but does not contain full agreement as to, five legal issues. Four such issues are raised by the Defendant and Defendants/Intervenors: (1) whether this Court has subject matter jurisdiction to decide the case; (2) whether Plaintiffs' claims are time-barred; (3) whether the IPUC's orders have preclusive effect; and (4) whether the IPUC, in ruling upon Idaho Power's Petition for Declaratory Order through Order Nos. 33785 and 33858, improperly determined Plaintiffs' QF status, thereby intruding upon FERC's exclusive jurisdiction in violation of PURPA.  Plaintiffs agree that the fourth issue is before the Court and they add a fifth issue: whether the IPUC and Idaho Power may properly deny 20-year "other QF" energy sales and purchase agreement rights to the four Plaintiffs despite their status as self-certified energy storage QFs, a status which they contend entitles them to power contracts on the terms available to "other QFs."

Defendants and Idaho Power offer similar arguments, with only a few exceptions, across their various dispositive motions.  Plaintiffs address similar issues in their motion for summary judgment.  Accordingly, for efficiency and clarity (and as discussed *supra*), this decision sequentially addresses the parties' arguments on each of the legal issues the parties identified, rather than separately considering each party's individual motions.  Ancillary legal issues and arguments are addressed *passim*.

**B.  Subject Matter Jurisdiction is Proper in this Court.**

Subject matter jurisdiction in this Court turns upon whether Plaintiffs are bringing what is known as an "implementation" challenge or what is known as an "as-applied" challenge.  Defs.'

Mem. ISO MTD/XMSJ 12 (Dkt. 42-1); Def.-Intervenor's Mem. ISO MTD 10 (Dkt. 40-1); Plfs.'

Resp. to Def.-Intervenor's MTD 2 (Dkt. 48).

Defendants frame the as-applied claims as "[c]hallenges to a state regulatory

commission's application of its PURPA implementation rules made pursuant to PURPA section

210(g)" to be pursued "through the state appellate processes generally available for review of

that regulatory commission's determinations." *Id.* at 12.  They contend the only venue to

challenge a state's implementation of PURPA is the state's own court system. *Id.* at 12–13.  In

summary, they describe federal courts as having "exclusive jurisdiction over implementation

challenges, while state courts have exclusive jurisdiction over as-applied challenges." *Id.* at 13

(quoting *Exelon Wind I, LLC v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014)).

Defendants assert that Plaintiffs' position is based on the particular circumstances of the

primary generation source and design capacity of their projects, and it is therefore an "as-

applied" challenge. *Id.* at 13–14.  They further contend that FERC's PURPA regulations grant

"absolute discretion" to the IPUC "to determine whether to establish and how to apply standard

rates for QFs with a design capacity of more than 100 kilowatts" as well as discretion to

"differentiate among qualifying facilities using various technologies on the basis of the supply

characteristics of the different technologies." *Id.* at 14 (citing 18 C.F.R. § 292.304(c)(2) and

quoting 18 C.F.R. § 292.304(c)(3)(ii)).

Idaho Power joins in the argument that this case involves "as-applied" challenges that

must be brought in state court.[5]  Def.-Intervenor's Mem. ISO MTD 10–13 (Dkt. 40-1).  Drawing

---

[5] However, Defendants argue that dismissal is warranted under Federal Rule of Civil
Procedure 12(b)(6) for failure to state a claim, while Idaho Power argues that dismissal is
appropriate under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter
jurisdiction.

**DECISION REGARDING DISPOSITIVE MOTIONS – 12**

upon case law, Idaho Power argues that implementation challenges pertain to whether the state

agency has failed to implement a lawful implementation plan under PURPA, while "as-applied"

challenges involve contentions the state agency's implementation is unlawful as it applies to or

affects an individual petitioner.  *Id.* at 10.  Stated differently, according to Idaho Power, an

implementation challenge addresses an alleged "fail[ure] . . . to devise an implementation plan . .

. that is consistent on its face with FERC's regulations" while an "as-applied" challenge

addresses a state agency's alleged "fail[ure] to adhere to its own implementation plan in its

dealings with a particular qualifying facility."  *Id.* at 11.  Idaho Power says that because Plaintiffs

challenge an order rather than a rule or a promulgated regulation, the challenge is as-applied.

     Plaintiffs disagree.  There is no comprehensive IPUC "implementation plan," Plaintiffs

contend, because the Commissioners have "never promulgated any rules or regulations

implementing PURPA."  Instead, the IPUC has implemented PURPA "on an ad hoc order-by-

order and case-by-case basis."  Plfs.' Resp. to Def.-Intervenor's MTD 1–2 (Dkt. 48).  At issue

here, they say, is the creation of a new implementation plan in the form of the challenged IPUC

orders [IPUC Order Nos. 33785 and 33858] that supplants what has been done previously.  *Id.* at

2–6.  Prior to issuing the two orders implicated in this case, the IPUC's implementation plan

consisted of the creation of two categories, with each different type of QF (as determined by

FERC) being placed into one of the two categories.  The first category consisted of wind and

solar QFs larger than 100 kW.  The second category consisted of "all other" QFs (other, that is,

than wind and solar) smaller than 10,000 kW.

     Plaintiffs do not challenge that earlier implementation plan.  Instead, they "would have

been satisfied had the Idaho Commission merely applied this implementation plan in response to

Idaho Power's Petition for Declaratory Order."  *Id.* at 3–4.  Stated simply, they do not assert that

**DECISION REGARDING DISPOSITIVE MOTIONS – 13**

the IPUC's *application* of a *prior* PURPA implementation plan is flawed; rather, they contend that the challenged orders implement a new plan that is itself flawed because the IPUC invaded FERC's sole authority to classify QFs.  Plfs.' Reply Mem. to Def.-Intervenor's MSJ 10 (Dkt. 46); Plfs.' Resp. to Def.-Intervenor's MTD 5 (Dkt. 48).  According to Plaintiffs, Idaho Power purposefully "sought *not to apply* the Idaho Commission's original implementation plan … but to fundamentally change that plan for the purpose of preventing Franklin from securing twenty-year contracts at published avoided cost rates as would have occurred under the original implementation plan."  *Id.*  Plaintiffs further contend that if the Commission had applied the pre-existing implementation plan their projects would have been classified – as they sought – in the "all other QFs" category because they are like every "other" "other QF" in that they are neither wind nor solar.[6]  In other words, they challenge what they describe as the IPUC's creation of a new implementation plan that "is facially unlawful in that it vests with the IPUC the alleged authority to make eligibility determinations under PURPA."  *Id.* at 5–6.

The Court agrees that PURPA creates a framework that tends to filter cases into either federal court or state court based on the nature of the challenge brought, but the IPUC's approach to implementing PURPA by order rather than by rule erodes the binary simplicity of that jurisdictional frame.  Hence, the Court is left to analyze what has occurred, from the starting point of Idaho Power's petition to the issuance of the challenged IPUC orders, as the means of identifying the salient positions and decisions of the parties, especially when the Commissioners' orders characterize their actions in a manner that is unmoored from the route by which they

---

[6] Significantly, the underlying record as to what power contracts the Franklin facilities ultimately might receive does not extend beyond the bow of the IPUC orders that are at the heart of this case.  The dispute before this Court may be the fulcrum of that question or it may be only one of multiple parts; the denouement of what such contracts might look like is yet to come. This Court does not reach that ultimate question.

**DECISION REGARDING DISPOSITIVE MOTIONS – 14**

reached their decisions.  By way of example, several portions of IPUC Order No. 33785, Docket

No. 4-6, describe a process and result that can only have been taken and reached by remodeling

the Commission's prior implementation of PURPA, accomplished by the Commissioners'

decision to classify Plaintiffs' facilities.  The Order states that Idaho Power's petition seeks

declaratory relief to "extend the 100 kW published rate eligibility cap to battery storage

projects."  Order 4 (Dkt. 4-7).  Significantly, this "extending" an eligibility cap necessarily

involves *changing* an implementation plan, because the Commissioners did not "extend"

anything.  Instead, the Commissioners chose to classify Plaintiffs' battery storage facilities not as

"other facilities," under the then-existing implementation template (because they are battery

storage facilities and not wind or solar facilities), but rather as "solar facilities," so as to make

them into solar facilities for the purpose of placing the 100 kW published rate eligibility cap

upon them.

Moreover, as described in the Order, the IPUC staff had recommended that the

Commission initiate a general investigation into the appropriate contract terms for battery storage

QFs.  *Id.* at 7.  Such a recommendation obviously was made for purposes of addressing

implementation issues relating to a particular type of "other QF," as there would be no need for

such an investigation if the QF involved was a wind or solar QF – which the Plaintiffs' QFs were

not.  In other words, such an investigation – regardless of whether it was done – is also clearly an

implementation step.  This is even more evident from the related recommendation made at the

same time by the IPUC staff, that the Commission "temporarily set a 100 kW threshold for

battery storage facilities to be eligible for published avoided cost rates."  *Id.* at 9.  This

recommendation likewise implies that the Commission was revising its prior implementation of

PURPA rather than applying the already existing implementation plan.  After all, a

**DECISION REGARDING DISPOSITIVE MOTIONS – 15**

recommendation that the IPUC "temporarily set" a different threshold for battery storage facilities makes clear that the IPUC staff recognized the existing implementation plan called for something different for battery storage QFs.

These "tells" of what is afoot are echoed in the rationale put forward by the Commissioners to justify their Order. "The Commission has authority under PURPA and FERC's implementing regulations," said the IPUC, "to set avoided costs, order electric utilities to enter into fixed-term obligations for the purchase of energy from QFs, and implement FERC rules." *Id.* Although not particularly significant in the context of applying an existing implementation plan, such language is of central significance in establishing or amending an implementation plan. Additionally, the Order states that "based on the above findings regarding the characteristics of battery storage and the compulsory consideration of its underlying primary energy source, we find a generic investigation unnecessary." *Id.* at 12. This statement demonstrates IPUC's position that the Order establishes how battery storage facilities are to be treated going forward – which further shows that the Order implemented PURPA in a manner adding to or revising a prior implementation plan.[7]

Two other statements in the Order highlight that it establishes an implementation plan. The Order states that "… in order to *qualify as a PURPA resource,* the primary energy source behind the battery storage must be considered. We must, then, look to [Plaintiffs'] … primary energy sources in order *to determine their eligibility under PURPA*." *Id.* at 11 (emphases added). In the first sentence, the IPUC is implementing PURPA by proclaiming, for the first

---

[7] Of course, the Commissioners' decision that a generic investigation was unnecessary suggests the Commissioners intended or believed that their Order was not a new implementation plan. But this Court must independently decide the significance of such Order in the context of Plaintiffs' claims for relief in this case.

**DECISION REGARDING DISPOSITIVE MOTIONS – 16**

time, how it intends to treat energy storage facilities.[8]  In the second sentence, the IPUC is applying that new implementation plan to Plaintiffs.

Because challenges to an implementation plan under PURPA are properly heard in federal court, this Court has subject matter jurisdiction over Plaintiffs' claims.

### C. Plaintiffs' Claims Are Timely.

The Commissioners and Idaho Power argue that Plaintiffs' claims are time-barred.  Defs.' Mem. ISO MTD/XMSJ 17–18 (Dkt. 42-1); Def.-Intervenor's Mem. ISO MTD 13–15 (Dkt. 40-1).  Idaho Power also frames this argument as a failure to exhaust administrative remedies.

Idaho Power points out that neither PURPA nor FERC regulation establishes an applicable limitations period for a QF to challenge the order of a state utility commission.  In such circumstances, Idaho Power references what it describes as a "well-settled" rule that "if Congress fails to include a statute of limitations in a statute, courts should – with few exceptions – impose a state limitations [period] 'most closely analogous' to the federal act in need."  Def.-Intervenor's Mem. ISO MSJ 9–12 (Dkt. 39-1) (quoting *N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, LP*, 117 F.Supp.2d 211, 246 (N.D.N.Y. 2000)).  There is an exception to that general rule, Idaho Power acknowledges, where applying a state limitations period would "frustrate or interfere with the implementation of national policies or be at odds with the purpose or operation of federal substantive law."  *Id.*

From there, both Idaho Power and the Defendants contend that the most closely analogous limitations period for this case is the 42-day appeal period provided under Idaho state

---

[8] The fact that the sentence stating "the primary energy source behind the battery storage must be considered" appears after several paragraphs of analysis also illustrates that this is a new implementation plan rather than mere application of a previously-published plan.  The details of the IPUC's analysis on this point are discussed further *infra*.

**DECISION REGARDING DISPOSITIVE MOTIONS – 17**

court rules of procedure (Idaho Appellate Rule 14(b)) to appeal an IPUC decision.  Defendants

issued their final order denying reconsideration on August 29, 2017.  The cited rule, if applied as

a statute of limitations, would bar Plaintiffs' claims because the § 210(h) enforcement action was

filed with FERC on December 14, 2017, more than 42 days later.

Plaintiffs respond that the 42-day agency appeal deadline has nothing to do with this case

because the Defendants lacked jurisdiction to issue the challenged orders, so no limitation period

ever began to run.  Plfs.' Resp. Mem. to Idaho Power's MSJ 10 (Dkt. 47).  Moreover, Plaintiffs

argue, even if some limitations period does apply, the 42-day period from Idaho Appellate Rule

14(b) is not the most analogous statute of limitation.  *Id.* at 10–14.  First, Plaintiffs contend Idaho

Appellate Rule 14(b) is not a *statute* of limitation.  Instead, Idaho law contains a catch-all statute

of limitations for all claims not covered by a more specific statute of limitations.  That statute –

I.C. § 5-224 – is four years.  Further, Plaintiffs point out that an appeal from an adverse agency

decision, as under Idaho Appellate Rule 14(b), "is not the commencement of a civil action that

tolls the statute of limitations."  Plfs.' Resp. Mem. to Idaho Power's MSJ 12 (Dkt. 47) (citing

*McCoy v. State Dep't of Health & Welfare*, 907 P.2d 110 (1995), *Johnson v. Idaho Cent. Credit

Union*, 908 P.2d 560 (1995), *Univ. of Utah Hosp. v. Board of Comm'rs of Ada Cnty.*, 915 P.2d

1387 (1996)).  An administrative appeal does not begin a "civil action," Plaintiffs argue, and

therefore the deadline for an appeal cannot be analogous to a statute of limitations.

Finally, Plaintiffs contend that a 42-day deadline is incompatible with PURPA timelines

for FERC review of a petition challenging the actions of a state regulatory authority.  When a

party petitions FERC to initiate an enforcement action, FERC has 60 days in which to initiate its

own enforcement action before the petitioner may do so in its own name.  *Id.* at 13; 16 U.S.C.

§ 824a-3(h).  Idaho Power contends Plaintiffs had 42 days to appeal the IPUC's orders or

**DECISION REGARDING DISPOSITIVE MOTIONS – 18**

petition FERC (or both), regardless of when they ultimately filed suit in this court.  Further,

Idaho Power argues that the 60-day period for FERC to review a petition is irrelevant because

that period begins after a petitioner has filed a grievance with FERC.[9]

The Court concludes that the 42-day appeal period is not the most analogous period of

limitations.  Of significance, Plaintiffs seek relief wholly distinct from state-court review of the

IPUC's orders.  The availability of a state appellate challenge did not limit them from pursuing

the course which led to this Court.  Consistent with their rights, they chose to pursue this case in

federal court, after first petitioning FERC to get involved.  That is, the Plaintiffs' federal case is

not targeted at the correctness of the IPUC's orders, if the Commissioners had the authority to

issue the rulings they did.  Rather, Plaintiffs challenge whether the Commissioners had the

authority in the first instance to issue the orders they did.[10]

Further, the gravamen of this case was inchoate until the IPUC issued its orders that are

the subject of Plaintiffs' claims.  It was in those orders that the Commissioners took action that

---

[9] This decision presumes that Plaintiffs would not be facing Idaho Power's timeliness challenge if they had petitioned FERC within 42 days of IPUC's final order denying reconsideration.

[10] Notably, elsewhere in its legal arguments Idaho Power emphasized the separate nature of the question of the specific QF status of Plaintiffs' facilities.  In its response to Plaintiffs' Motion for Summary Judgment, Idaho Power said that it did not dispute Plaintiffs' QF self-certification and asked the IPUC to assume the validity of the self-certifications, but "without prejudice to Idaho Power's ability to separately challenge them before FERC, the proper authority to determine QF status."  Def.-Intervenor's Resp. to Plfs.' MSJ 12 (Dkt. 38).  Similarly, the Commissioners said in Order No. 33785 that "the battery storage facilities' QF status is a matter within FERC's jurisdiction and is not at issue in this case."  There is an obvious incongruity between those statements and the argument to impose a timeliness deadline upon Plaintiffs' filing a FERC action drawn from an appeal period applicable to the IPUC decisions.  In other words, if the Commissioners had ruled upon Idaho Power's petition in a manner that Idaho Power contended was outside of the Commission's PURPA authority, presumably Idaho Power would be relying upon "its ability to separately challenge … before FERC, the proper authority to determine QF status."

**DECISION REGARDING DISPOSITIVE MOTIONS – 19**

Plaintiffs contend was outside of the Commissioners' authority to act – *i.e.*, to act in a manner

that served to classify Plaintiffs' QF facilities when that authority belonged solely to FERC.  At

that point in time, Plaintiffs had the right to ask FERC to become involved and they exercised

such right.  When FERC chose not to become involved, Plaintiffs had the right to bring their own

action to address the issues of federal law created by the IPUC's orders, and they did so.  Each of

those steps was taken in a timely manner.  The state appellate rule that governs appeals from the

IPUC over matters properly within the Commission's authority is not the most analogous statute

of limitation to this case, even if Idaho Appellate Rule 14b could be considered a statute of

limitation, because this case challenges whether the Commissioners acted in a way not permitted

by federal law.  As to Idaho law, the most closely analogous statute of limitation, and one that

would not "frustrate or interfere with the implementation of national policies or be at odds with

the purpose or operation of federal substantive law," is the four-year limitations period contained

in the catch-all statute, I.C. § 5-224.

> Thus, Plaintiffs' instant claims are timely.  Moreover, Plaintiffs' claims are not subject to

dismissal for failure to exhaust administrative remedies, as nothing in § 210(h) of PURPA

requires Plaintiffs to seek relief in state court prior to petitioning FERC to enforce PURPA.

### D.  Plaintiffs' Claims Are Not an Improper Collateral Attack.

> Idaho Power argues that Plaintiffs' claims are an improper collateral attack on final IPUC

orders that have preclusive effect.  Def.-Intervenor's Mem. ISO MSJ 11–13 (Dkt. 39-1).  Idaho

Power relies upon Idaho Code § 61-625, which states that "[a]ll orders and decisions of the

commission which have become final and conclusive shall not be attacked collaterally," and on

case law identifying a public policy interest in finality.  *Utah-Idaho Sugar Co. v. Intermountain

Gas Co.*, 597 P.2d 1058 (Idaho 1979).  Further, Idaho Power contends that the orders are entitled

**DECISION REGARDING DISPOSITIVE MOTIONS – 20**

to preclusive effect because Plaintiffs had a full and fair opportunity to litigate the issue of the

Commissioners' treatment of their QF status before a final order was issued.  Def.-Intervenor's

Mem. ISO MSJ 13 (Dkt. 39-1) (citing *Ticor Title Co., v. Stanion*, 157 P.3d 613 (Idaho 2007)).

　　　　Plaintiffs' response mirrors their argument on the timeliness issue, *i.e.*, because the

Commissioners lacked the authority to enter the orders, collateral estoppel cannot apply.

Relying upon the Restatement (2d) of Conflict of Laws, § 97(d), Plaintiffs contend that concepts

of res judicata and collateral estoppel are inapplicable when they would "conflict with an

important federal policy."  PURPA, Plaintiffs argue, contains exactly such a policy.  Moreover,

they argue that a challenge to the subject matter jurisdiction of the court "is never waived and

purported judgments entered by that court, acting without subject matter jurisdiction, are void

and subject to collateral attack."  *State v. Heyrend*, 929 P.2d 744, 747 (Idaho App. 1996).

　　　　The Court agrees with Plaintiffs.  Plaintiffs' claims directly implicate the division of

responsibilities between FERC, on the one hand, and a state public utility commission, on the

other, as prescribed in PURPA.  As such, this lawsuit – brought in federal court and seeking a

ruling on an issue of federal law in a process expressly outlined in PURPA – is not a collateral

attack on the IPUC's orders.  This lawsuit is Plaintiffs' attempt to enforce Defendants'

compliance with PURPA, and Plaintiffs raise a credible claim that the IPUC lacked authority to

issue the challenged orders.  For those reasons, there is no improper collateral attack upon the

Commissioners' orders.[11]

---

[11] The disconnect between Defendants' statements in the IPUC proceeding and now,
described in fn. 9, *supra*, is equally apparent here.

**DECISION REGARDING DISPOSITIVE MOTIONS – 21**

**E.  Despite their Disavowal of Any Intention to Do So, Defendant Commissioners Inquired into and Decided Plaintiffs' QF Status, in Violation of PURPA.**

**a.  The parties' positions.**

In Order No. 33785, the Defendant Commissioners discussed the basic framework in which PURPA, FERC, and the IPUC operate before turning to Idaho Power's request for an order declaring that battery storage facilities such as Plaintiffs' are subject to the same power contract treatment as wind and solar QFs rather than treatment as all "other QFs."  IPUC Order No. 33785 (July 13, 2017) (Dkt. 4-6).  The Commissioners noted that "for purposes of its Petition, [Idaho Power] did not challenge the QF status" of Plaintiffs' projects.  *Id.* at 3.

In their Order, the Commissioners rejected the argument that Idaho Power's petition should be construed as seeking modification of prior IPUC orders.  *Id.* at 10.  They stated that neither PURPA nor FERC's regulations expressly identify battery storage as a renewable resource eligible for QF status and the benefits provided under PURPA.  *Id.*  However, the Commissioners then said that "[t]he battery storage facilities' QF status is a matter within FERC's jurisdiction and is not at issue in this case."  *Id.* at 11.

For their part, Plaintiffs opposed Idaho Power's petition, asserting there was no legal controversy because the salient provision of the existing IPUC implementation of PURPA called for "access to published avoided cost rates for resources other than wind and solar."  *Id.* at 4 (quoting Plaintiffs' submitted comments and quoting IPUC Order No. 32697).  That is, Plaintiffs' position before the IPUC, which is the same position they argue here, was that their facilities are not solar QFs.  Plaintiffs' facilities are self-certified with FERC as "energy storage QFs," pursuant to their submission of FERC Form 556 for each facility.  FAC ¶¶ 51, 52 (Dkt. 2);

Defs.' Answer Exhs. 8–11 (Dkts. 4-8 through 4-11).[12]  Further, Plaintiffs argue that their QFs

cannot be deemed solar QFs merely because solar energy will be used to energize batteries

which store the power.  Among other things, Plaintiffs point out that their facilities can time-shift

power transmission, so that power can be supplied to the grid even when it is dark or cloudy.[13]

Stated differently, Plaintiffs' projects could vary their power output profiles as compared to those

of solar QFs.

Moreover, Plaintiffs emphasize that the QF certifications filed with FERC set out that

each "energy storage Qualifying Facility is designed to, and will, receive 100% of its energy

input from a combination of renewable energy sources such as wind, solar, biogas, biomas [sic],

etc.  The current initial design utilizes solar photovoltaic (PV) modules … to provide the electric

energy input to the Qualifying Facility's battery storage system."  FERC Form 556 (Dkts. 4-8

through 4-11).  Additionally, the certifications required Franklin to "describe the primary energy

input: (check one main category and, if applicable, one subcategory)."[14]  Plaintiffs checked

"Renewable resources (specify)" as the main category and "Other renewable resource …" rather

than "Solar – photovoltaic" or "Solar – thermal" as the subcategory.  *Id.*

The heart of Plaintiffs' federal claims is their argument that the IPUC "impermissibly

intruded into an area exclusively reserved by PURPA to [FERC] by its inquiry into the energy

source(s) proposed to be utilized by" the Franklin QFs.  Plfs.' Mem. ISO MSJ 2 (Dkt. 29-1).

Under PURPA, a QF is a small power production facility that FERC "determines, by rule, meets

---

[12] The filings in this matter variously refer to the facilities as "battery storage" or "energy storage" facilities.  Such a distinction is not significant for purposes of this decision.

[13] The same would be true, one can presume, when the wind is not blowing, if wind power were the renewable resource used to energize a battery storage system.

[14] Paragraph 6a of the Form 556.

**DECISION REGARDING DISPOSITIVE MOTIONS – 23**

such requirements (including requirements respecting fuel use, fuel efficiency, and reliability) as [FERC] may, by rule, prescribe." 16 U.S.C. § 796(17)(C).  All parties agree that "Plaintiffs' QF status is a matter exclusively within FERC's jurisdiction."  Stipulated Statement of Facts and Legal Issues ¶ A18 (Dkt. 37).  Indeed, "[t]he structure of PURPA and [FERC's] regulations, reflect Congress's express intent that [FERC] exercise *exclusive authority* over QF status determinations."  *Indep. Energy Producers Ass'n v. Cal. Pub. Utils. Comm'n*, 36 F.3d 848, 856 (9th Cir. 1994) (emphasis added).

> **b.  The Commissioners' treatment of the *Luz* case.**

The dispute, then, is whether the Commissioners' orders included a determination of Plaintiffs' QF status.  If the Commissioners did so, then Plaintiffs are entitled to summary judgment.  If not, Defendants are entitled to summary judgment.  Because the parties do not dispute the material facts and the Court finds no dispute as to the material facts, the question is appropriately decided on summary judgment.

The answer to the question turns upon an examination into what the Commissioners did in their orders, as distinct from what they said they were doing (or more precisely here, what they said they were not doing).  Agency staff advised the Commissioners that "it is appropriate to look to the [Plaintiffs'] QFs' energy sources in determining their eligibility for published rates" based on FERC's decision in *Luz Development and Finance Corporation*, 51 FERC P 61,078 (1990).  *Id.*  The Order characterized the decision in *Luz* as standing for FERC's rejection of an argument that "a battery storage facility independently meets the definition of a primary energy source because it generates energy when an electro-chemical reaction discharges the stored power from the battery."  *Id.* (citing *Luz* at 61,169.)  The Commissioners then quoted *Luz*:

> Contrary to Luz's assertion, the primary energy source of the battery system is not the electro-chemical reaction. Rather, it is the electric energy which is utilized to

**DECISION REGARDING DISPOSITIVE MOTIONS – 24**

initiate that reaction, for without that energy, the storage facility could not store or produce the electric energy which is to be delivered at some later time. Since this energy is the primary energy source of the facility, it is necessary to look to the source of this energy as the ultimate primary energy source of the facility.

*Id.* (quoting *Luz* at 61,171).

Applying this reasoning, the Commissioners ruled that "in order to qualify as a PURPA resource, the primary energy source behind the battery storage must be considered. We must, then, look to [Plaintiffs'] … primary energy sources in order to determine their eligibility under PURPA. The primary energy source for [Plaintiffs] … is solar generation." *Id.* The Order rejected Plaintiffs' position that their energy storage facilities are entitled to published rates rather than negotiated rates. According to the Commissioners, such an argument contradicted "FERC's pronouncement that energy storage facilities are not *per se* renewable resources/small power production facilities under PURPA." *Id.* at 12.

The Commissioners granted Idaho Power's petition for a declaratory ruling and ordered that Plaintiffs were not entitled to access "published avoided cost rates for resources other than wind and solar" but rather were subject to negotiated rates as a "wind or solar" QF because the projects utilize "solar as their primary energy source." *Id.* at 12–13. In a subsequent order, the Commissioners framed Plaintiffs' argument as contending that "while the Commission conceded that battery storage facilities' qualifying facility (QF) status is a matter within … FERC's … jurisdiction," the Commission "nevertheless determined that 'energy storage QF facilities that use solar power as a primary energy input are, in fact, [s]olar QFs and not energy storage QFs,' [thus] intruding on FERC's jurisdiction." IPUC Order No. 33858 at 1–2 (Aug. 29, 2017) (Dkt. 4-7).

The IPUC denied the petition for reconsideration on August 29, 2017 in Order No. 33858 (Dkt. 4-7), and in doing so acknowledged Idaho Power's support for the initial order and Idaho

**DECISION REGARDING DISPOSITIVE MOTIONS – 25**

Power's argument that Plaintiffs' petition for reconsideration should be denied.  The Commissioners reiterated their position that the prior order did not decide the "QF status of battery storage facilities."  *Id.* at 3.  Rather, the IPUC said it had "looked to the primary energy source of Franklin's battery storage QFs to determine the projects' eligibility to particular avoided cost rates and contract terms."  *Id.*

### c.  The Court's analysis of the *Luz* case.

Plaintiffs contend that the Commissioners misread (and therefore misapplied) FERC's *Luz* decision.  The Court agrees.

In *Luz*, FERC was considering an application for QF certification as a facility consisting primarily of an electro-chemical battery.  Luz would be "purchasing electric energy from the local grid during off-peak period, storing that energy and making it available for distribution during peak periods."  *Luz*, 51 FERC P 61,078, 61,168 (1990).  FERC had to decide whether Luz's facility qualified for certification as a QF when more than 25% of the total energy input to the facility resulted from direct fossil fuel firing, based on the characteristics of the local grid from which the energy would be purchased.  If FERC included fossil fuel energy generation at other facilities that supplied power to the local grid in calculating Luz's total energy input, Luz could not qualify for certification.  To avoid this, Luz described the "primary energy source of the facility" as the "electro-chemical reaction giving rise to the discharge of electric energy by the battery."  *Id.*  That is, Luz asked FERC to disregard, for purposes of QF certification, the fact that the energy received by the facility from the local grid (and then stored) was generated by fossil fuel firing.

Thus, the question facing FERC in *Luz* was how PURPA's fuel use requirements applied to a battery storage facility's application for QF certification.  Luz argued that "the time shifting

**DECISION REGARDING DISPOSITIVE MOTIONS – 26**

function, as a clearly articulated objective at the time PURPA was enacted, can only make sense and be implemented if energy storage facilities like the proposed battery system are allowed to operate as QFs and to use electric energy without an inquiry as to the source of energy used to generate that electricity." *Id.* at 61,170.  Luz also "appear[ed] to argue that … energy storage facilities are renewable resource (small power production) facilities *per se*, thus ruling out the need to inquire into their primary energy source." *Id.* at 61,171.

FERC denied Luz's certification application.  It held that "energy storage facilities are subject to the same fuel use limitations as all other small power production facilities." *Id.* at 61,170.  Even though there was no specific reference to energy storage systems in the applicable statutes and rules, FERC ruled that such systems cannot "be singled out for any different sort of treatment with respect to their primary energy source." *Id.* at 61,171.  Significantly, however, FERC summarized its ruling in this manner:

> In sum, *energy storage facilities such as the proposed Luz battery system are a renewable resource for purposes of QF certification*. However, such facilities are subject to the requirement that the energy input to the facility is itself biomass, waste, a renewable resource, a geothermal resource, or any combination thereof or a demonstration that any fossil fuel-fired input constitutes no more than 25 percent of the total energy input to the facility….

*Id.* at 61,172 (emphasis added).

*Luz*, then, concerned the requirements an energy storage facility must satisfy to qualify for FERC certification as a QF.  In such a setting, per *Luz*, FERC considers whether the energy input to the facility meets PURPA requirements but does so from the foundational starting point that energy storage facilities are a renewable resource for purposes of QF certification.  Plaintiffs say they pointed out to the Commissioners that *Luz* did not examine the energy input of the proposed battery storage qualifying facility for any reason other than to confirm that "the energy input to the facility is itself biomass, waste, a renewable resource, a geothermal resource, or any

**DECISION REGARDING DISPOSITIVE MOTIONS – 27**

combination thereof or a demonstration that any fossil fuel-fired input constitutes no more than 25 percent of the total energy input to the facility."

Plaintiffs frame the *Luz* decision as establishing energy storage facilities as a distinct class of QF.  FAC ¶ 58 (Dkt. 2); Plfs.' Mem. ISO MSJ 11 (Dkt. 29-1).  There are many types of small power production facilities.  Of those, some types – because of their renewable resource and energy input design – are entitled to be deemed "Qualifying Facilities" under PURPA. Battery storage facilities are one such type, and the Court agrees that FERC has not disputed – and the holding in *Luz* certainly states directly – that FERC recognizes that battery storage facilities can be QF facilities, albeit "subject to the same fuel use limitations as all other small power production facilities."  *Id.* at 61,170.  Additionally, even though PURPA and its rules do not refer specifically to energy storage systems, FERC specified that energy storage facilities cannot "be singled out for any different sort of treatment with respect to their primary energy source."  *Id.* at 61,171.  Thus, there can be no question after *Luz* that, so long as a facility meets the fuel use limitations and other applicable requirements, an energy storage facility is entitled to QF status and the rights and entitlements that attach to such a status.

Hence, the Court agrees with Plaintiffs that battery (energy) storage facilities are recognized by FERC and can meet QF certification requirements.  Significantly, the Court also agrees that the holding in *Luz* means that a battery storage facility is not precluded from QF certification even if the energy input into the battery storage facility originates from a renewable power source that, on its own, could be a differently classified QF facility – such as a solar QF. Rather, the QF designation *requires* that renewable power be used for the power that goes into the battery storage system.  *Luz* held that "energy storage facilities are subject to the same fuel use limitations as all other small power production facilities" and that such facilities should not

"be singled out for any different sort of treatment with respect to their primary energy source." *Luz*, at 61,170, 61,171.  Additionally, the decision holds that "energy storage facilities … are a renewable resource for purposes of QF certification," so long as they meet the fuel use requirements for other renewable resource facilities.  *Id.* at 61,172.

### d.  The Commissioners' PURPA violation.

Regardless of whether the Commissioners leapfrogged the "distinct class of QF" status of Plaintiffs' projects, their orders nonetheless exceeded their authority under PURPA.  Despite acknowledging on one hand that only FERC can certify a QF and stating that no one had challenged Plaintiffs' self-certified energy storage QF status, the Commissioners then used a misplaced reliance on the holding in *Luz* as a means of claiming the right to make their own determination of Plaintiffs' QF status, which they then did.  Specifically, their Order stated that "to qualify as a PURPA resource, the primary energy source behind the battery storage must be considered.  We must, then, look to [Plaintiffs'] … primary energy sources in order to determine their eligibility under PURPA."[15]  IPUC Order No. 33785 at 11 (July 13, 2017) (Dkt. 4-6).  But by virtue of Plaintiffs' FERC Forms 556, which self-certified their projects as QFs (and energy storage QFs, not solar QFs), Plaintiffs' eligibility had already been decided under PURPA.  The Commissioners had no authority to evaluate whether plaintiffs' facilities "qualify as a PURPA resource" or "to determine their eligibility under PURPA."  Rather, the role of the IPUC is to implement a plan that complies with PURPA and then apply such implementation plan.  By

---

[15] These statements were made in the context of Idaho Power's petition for a declaration of the contract terms for which Plaintiffs' projects were eligible.  However, as discussed *supra*, because the Orders addressed for the first time how the IPUC would treat battery storage facilities, they constitute an implementation plan subject to federal challenge.

**DECISION REGARDING DISPOSITIVE MOTIONS – 29**

"looking behind" Plaintiffs' QF status to examine the proposed[16] input power generation profile of the facilities, the Commissioners violated PURPA by questioning Plaintiffs' qualifications or eligibility under PURPA, and by then deciding, for all substantive purposes, that each is a solar QF rather than an energy storage QF entitled to treatment as an "other QF."

More broadly, the Commissioners implemented a plan purporting to allow or require the IPUC to consider the primary source of energy for a battery storage system in order to classify it for contracting purposes under Idaho law. But when doing so ignores or looks behind a facility's QF status with FERC – in this case, self-certification as an energy storage QF and not a solar QF – such an implementation plan violates PURPA. In other words, each time the Commissioners purport to say that the Plaintiffs' QF status was neither put at issue by Idaho Power's petition, nor did they make any decision upon Plaintiffs' QF status, the fact of the matter is that the relief sought by Idaho Power and the decision of the Commissioners granting such relief *could not have been reached without making a decision upon Plaintiffs' QF status.*[17]

The IPUC staff, as discussed in Order 33785, described the Plaintiffs' analysis as "overly simplistic." IPUC Order No. 33785 at 6 (July 13, 2017) (Dkt. 4-6). However, it is the IPUC's analysis that does not go far enough. Idaho Power, in its original petition before the IPUC,

---

[16] As described in the Plaintiffs' FERC Forms 556, they reserve the right to change their power input from solar to other renewable sources, consistent with PURPA. Indeed, they state in such forms that "the sole direct source of energy input provided to the battery facility will be, as described above, renewable sources." FERC Forms 556 at p. 9/¶ 7h (Dkts. 4-8 through 4-11).

[17] This is further illustrated by extending the scenario. Consider if the Commissioners, in "look[ing] to [Plaintiffs'] … primary energy sources in order to determine their eligibility under PURPA" [IPUC Order No. 33785 at 11 (July 13, 2017) (Dkt. 4-6)] had, instead, concluded that the facilities were *not* eligible under PURPA. Such a result would starkly violate the jurisdictional boundaries of PURPA. So also does the scenario here, where the Commissioners have done the very same thing – that is, decided "[the Plaintiffs' facilities] eligibility under PURPA."

**DECISION REGARDING DISPOSITIVE MOTIONS – 30**

sought an order "determining the proper contract terms, conditions, and avoided cost pricing to be included in … PURPA … contracts requested by several battery storage facilities," including Plaintiffs'.  Walker Decl. Ex. 9 p. 1 (Dkt. 39-5 p. 14).   The petition acknowledged that FERC has exclusive jurisdiction to evaluate QF status and it said Idaho Power was not asking the IPUC for "a determination as to QF status."  *Id.* at 6 (Dkt. 39-5 p. 19).  Idaho Power said that it sought only a declaratory order "clarifying" contract terms for battery storage facilities.  Indeed, it pointed out that "[t]he status of and applicability of the Commission's implementation of PURPA with regard to proposed battery storage facilities was not considered and/or addressed in the Commission's determinations as to published rate eligibility cap, differentiation of applicable avoided cost rates to different generation technologies, or its determinations regarding other contractual terms and conditions, such as contract term."[18]  *Id.* at 7 (Dkt. 39-5 p. 20).

Perhaps there are other actions or additional proceedings that could have been, or may yet be, undertaken to decide what contract terms apply to any PURPA contract relationship between Plaintiffs and Idaho Power. There is a myriad of responsibilities upon such matters that is properly the province of the Commissioners.[19]  However, even though the IPUC had never before considered energy storage facilities, the Commissioners took none of the steps available to them to make a considered decision upon the details of a PURPA contract for energy storage facilities, such as eligibility caps or the applicability of standard avoided cost rates.  Instead, the Commissioners "classified" Plaintiffs' energy storage facilities as solar facilities.  The words that

---

[18] This representation by Idaho Power further supports the Court's conclusion, *supra*, that the instant case brings an implementation challenge rather than an as-applied challenge.

[19] This decision does not speak to whether or when Plaintiffs may have become entitled to particular contract terms under the prior implementation plan, before the Commissioners issued the orders challenged in this case.

**DECISION REGARDING DISPOSITIVE MOTIONS – 31**

were used by Idaho Power and the Commissioners to describe what was requested or what was done as something other than the act of classifying Plaintiffs' energy storage facilities as solar facilities – words such as "extending," "temporarily setting," or "clarifying" – are no more than synonyms for "classification" in the context of what occurred. They do not change the import of what was improperly done.

Thus, the Court concludes as a matter of law that the Commissioners improperly invaded FERC's domain by determining Plaintiffs' QF status.

**F. The Eleventh Amendment Does Not Shield Defendants from Plaintiffs' Claims.**

Plaintiffs seek "[d]eclaratory and injunctive relief directing Defendants to implement PURPA in a lawful manner by recognizing the QF status of energy storage QFs as distinct from their energy input (source)." FAC ¶ 60 (Dkt. 2). They also seek "[d]eclaratory and injunctive relief directing Defendants to require the utilities under their jurisdiction to afford energy storage QFs all rights and privileges afforded to 'all other' QFs – other than wind and solar QFs." *Id.* ¶ 61. In moving for summary judgment, they seek an order "declaring and requiring the Defendants honor Plaintiffs' 'QF' status and requir[ing] Idaho Power to tender twenty (20) year contracts at published rates consistent with their status as 'other QF' pursuant to established IPUC requirements." Plfs.' Mem. ISO MSJ 19–20 (Dkt. 29-1).

Defendants challenge such claims based upon the immunity from suit generally applicable to State defendants in federal court under the Eleventh Amendment to the federal Constitution. Because the Eleventh Amendment bars a federal court from directing a state agency how to conform its conduct to state law, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105–106 (1984), Defendants argue this Court may not hear and decide Plaintiffs' claims, as described in their briefing:

**DECISION REGARDING DISPOSITIVE MOTIONS – 32**

Contrary to what Plaintiffs' imply, Defendants did not make a QF status determination. Rather, Defendants exercised their discretionary authority in determining the applicable terms of a QF contract. And the terms of QF contracts are a matter of state, not federal, law.

Nothing in PURPA or FERC's regulations restrict the PUC from defining contract terms, including looking to the primary source of QF generation. In other words, federal law does not control. Rather, the PUC determination of at issue is an application of the PUC's permitted discretion on the allowance of standard rates for projects having a design capacity over 100 kW (18 C.F.R. § 292.304(c)(2)). PURPA section 210(g)(1), 16 U.S.C. § 824a-3(g)(1), entrusts the review of this determination to the Idaho Supreme Court, not to the federal courts. The Eleventh Amendment thus bars Plaintiffs' claims.

Defs.' Mem. ISO MTD/XMSJ 18–19 (Dkt. 42-1) (citation omitted).

The Eleventh Amendment provides that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  The Eleventh Amendment applies with the same force and effect to immunize a State from suits brought by its own citizens.  *Hans v. Lousiana*, 134 U.S. 1 (1890). The immunity extends to a State and to "an arm or instrumentality of the State."  *Lewis v. Clarke*, 137 S.Ct. 1285, 1290 (2017).  The IPUC is an arm or instrumentality of the State of Idaho; therefore, the Eleventh Amendment bars any suit against the IPUC itself.

However, the Eleventh Amendment does not prohibit suit in federal court against individual commissioners in their official capacities if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).  "An *allegation* of an ongoing violation of federal law … is ordinarily sufficient."  *Id.* at 646 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997)).

**DECISION REGARDING DISPOSITIVE MOTIONS – 33**

Here, Plaintiffs' original Complaint named the IPUC as the only Defendant.  (Dkt. 1.)

However, Plaintiffs filed their First Amended Complaint two days later, substituting the

individual commissioners in their official capacities for the IPUC as an entity.  (Dkt. 2.)  Thus,

the Eleventh Amendment does not bar Plaintiffs' claims against the Commissioners so long as

they allege an ongoing violation of federal law and prospective relief.

Plaintiffs allege that the IPUC's current implementation plan violates PURPA by

improperly classifying the QF status of battery storage facilities.  Although Defendants deny the

claims, they do acknowledge that "[t]he Complaint alleges … that Defendants' actions violate

PURPA by usurping FERC's jurisdiction to make determinations of QF status of particular

PURPA projects."  Defs.' Mem. ISO MTD/XMSJ 18 (Dkt. 42-1).  Thus, Plaintiffs contend that

the current implementation plan, which has been in effect since the IPUC issued the orders

challenged in this action, violates PURPA.  This suffices as an allegation of an ongoing violation

of federal law.

The Court is also satisfied that Plaintiffs' requested relief is "properly characterized as

prospective."  Plaintiffs request "[d]eclaratory and injunctive relief directing Defendants to

implement PURPA in a lawful manner …" and "to require the utilities under their jurisdiction to

afford energy storage QFs all rights and privileges afforded to 'all other' QFs …"  FAC ¶¶ 60, 61

(Dkt. 2).  Plaintiffs' motion for summary judgment asks this Court to "requir[e] the Defendants

honor Plaintiffs' 'QF' status and require Idaho Power to tender twenty (20) year contracts at

published rates …"  Plfs.' Mem. ISO MSJ 15 (Dkt. 29-1).

Such claims include requests for relief properly characterized as prospective.  Among the

relief sought, Plaintiffs seek to enjoin Defendants from enforcing against them a PURPA

implementation plan they allege is unlawful.  This suffices as a request for prospective relief.

**DECISION REGARDING DISPOSITIVE MOTIONS – 34**

Further, because Plaintiffs' claims are levied against the individual IPUC Commissioners in their official capacities, they allege an ongoing violation of federal law, and they seek prospective relief, Defendants are not immune from liability under the Eleventh Amendment.

### G. Plaintiffs Are Entitled to Some, But Not All, of Their Requested Relief.

The Court next turns to the relief to which Plaintiffs are entitled.  As described *supra*, the Court has concluded that Defendants violated PURPA by improperly classifying Plaintiffs' QF status.  The Court will issue a declaratory ruling holding that the IPUC's orders at issue here are unlawful.  The Court will also enjoin the Commissioners from applying such orders to Plaintiffs' facilities as if such facilities are "solar QFs" under the IPUC's prior PURPA implementation plan that distinguished "wind and solar QFs" from "other QFs."  The Court will further enjoin the Commissioners from considering the energy source input into Plaintiffs' energy storage QFs for the purpose of classifying the QFs in any way other than as energy storage QFs.

Such a ruling is a predicate to the question of whether prospective relief is justified. Accordingly, the Court also will order Defendants to implement PURPA in a lawful manner in any future actions they take in their official capacities as IPUC commissioners as to Plaintiffs' facilities that are the subject of this case, to include but not be limited to the classification of Plaintiffs' facilities as energy storage QFs.

However, this Court will not order Defendants to place specific terms upon any power supply contract Idaho Power must enter with Plaintiffs under PURPA.  First, there is the jurisdictional divide.  Second, the Court is not persuaded on the closed record in this case that Plaintiffs are entitled as a matter of law to the particular contract terms they ask the court to impose. To the extent Plaintiffs seek an order requiring the tender of specific contract terms, such a request involves the application of a state regulatory agency's rules to Plaintiffs as

**DECISION REGARDING DISPOSITIVE MOTIONS – 35**

individual petitioners.  Such relief is properly pursued before the IPUC.[20]  *Winding Creek Solar LLC, v. Peevey*, 293 F.Supp.3d 980, 993–994 (N.D. Cal. Dec. 6, 2017).  Under PURPA, a QF may bring judicial actions before FERC and in federal court against state regulatory commissions to require the implementation of PURPA's rules but not their application.  16 U.S.C. § 824a-3(f), (h)(2)(B).  Thus, this Court will stop short of granting the full relief Plaintiffs seek.  Instead, those additional issues may be taken up in further proceedings, subject to the rulings and constraints of this decision, if Plaintiffs choose to pursue such further proceedings.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** as follows:

1.  Defendant-Intervenor Idaho Power's Motion for Summary Judgment (Dkt. 39) and Motion to Dismiss for Lack of Jurisdiction (Dkt. 40) are DENIED.

2.  Defendants' Motion to Dismiss or in the Alternative Cross-Motion for Summary Judgment (Dkt. 42) is DENIED.

3.  Plaintiffs' Motion for Summary Judgment (Dkt. 24) is GRANTED IN PART:

    a.  The Court finds that the Defendant IPUC Commissioners violated the Public Utility Regulatory Policies Act of 1978, 16 U.S.C. §§ 2601 et seq., when they issued final order numbers 33785 on July 13, 2017 and 33858 on August 29, 2017.  Such orders established an implementation plan that impermissibly classified the QF status of Plaintiffs' energy storage facilities that are certified under such Act as energy storage facilities.  Classifying such facilities as "solar

---

[20] Of course, if Plaintiffs are denied contracts on the terms they desire and they perceive such denial is grounded in a violation of PURPA jurisdictional lines, they may be able to again seek recourse using the avenues PURPA affords.

QFs" is outside the Commissioners' authority as state regulators and therefore in violation of federal law.

    b.   Defendants are permanently enjoined from enforcing or applying either of such IPUC final orders to Plaintiffs' facilities as if such facilities are classified as something other than energy storage QFs, to include but not be limited to classifying Plaintiffs' facilities as if they are "solar QFs" under the IPUC's prior implementation plan.  Defendants are further permanently enjoined from considering the energy source input into Plaintiffs' energy storage QFs for the purpose of classifying the QFs in any way other than as energy storage QFs.

4.   Plaintiffs' Motion for Summary Judgment (Dkt. 24) is otherwise DENIED.  The Court specifically declines to order Defendants to require utilities under their jurisdiction to afford energy storage QFs all rights and privileges afforded to "other QFs" under the IPUC's PURPA implementation plan.

5.   Defendants are directed to take such action as is necessary and appropriate to give full force and effect to the rulings set forth herein.

    This memorandum decision and order resolves all outstanding claims in this case.  A judgment will follow.

DATED:  **January 17, 2020.**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**DECISION REGARDING DISPOSITIVE MOTIONS – 37**